ANNETTE KINGSLAND ZIEGLER, J.
¶ 1. This is a review of a decision of the court of appeals, Betz v. *307 Diamond Jim's Auto Sales, 2012 WI App 131, 344 Wis. 2d 681, 825 N.W.2d 508, reversing an order of the Milwaukee County Circuit Court[1] denying a motion by the attorneys representing Randy L. Betz ("Betz") to recover statutory attorney's fees from Diamond Jim's Auto Sales ("Diamond Jim's").
¶ 2. In this case we are asked to determine the circumstances under which plaintiffs counsel may recover statutory attorney's fees directly from a defendant when, without counsel's knowledge or approval, the plaintiff and defendant enter into a settlement agreement that does not address attorney's fees.
¶ 3. Betz hired Milwaukee attorney Vincent Megna ("Megna") to represent him in his dispute with Diamond Jim's.[2] Megna filed a lawsuit on Betz's behalf under two fee-shifting statutes. During the litigation, Betz and Diamond Jim's met and settled the case without their attorneys' knowledge or approval. The settlement agreement did not reference payment of Megna's statutory attorney's fees. Subsequently, Megna filed a motion with the circuit court seeking to recover his statutory fees from Diamond Jim's. The circuit court denied Megna's motion. The court of appeals reversed, citing public policy concerns with enforcing settlements made "behind the backs" of the attorneys in cases brought under fee-shifting statutes.
¶ 4. Diamond Jim's argues that the right to recover statutory attorney's fees belonged to Betz, and that Betz did not assign his right to recover those fees *308 to Megna. As a result, Diamond Jim's argues that Megna cannot recover fees directly from Diamond Jim's. Further, Diamond Jim's argues that public policy encourages parties to settle disputes, and requiring counsel's consent to such settlements in fee-shifting cases presents a conflict of interest.
¶ 5. Megna argues that Betz did assign his statutory right to recover attorney's fees, and that the public policy underlying fee-shifting statutes would be undermined if clients were allowed to settle fee-shifting cases without ensuring payment of statutory attorney's fees. Megna further asserts that attorney involvement and consent to settlement agreements in fee-shifting cases will not serve as a barrier to settlement.
¶ 6. We conclude that the statutory right to recover attorney's fees belonged to Betz, and that Betz did not assign his right to recover those fees to Megna in their fee agreement. Because we conclude that Betz did not assign his right to recover statutory attorney's fees to Megna, we must conclude that Diamond Jim's could not have had notice of the assignment. As a result, we conclude that Megna may not seek statutory attorney's fees directly from Diamond Jim's, and that the settlement agreement entered into between Diamond Jim's and Betz is clear, unambiguous, and enforceable. We therefore reverse the court of appeals.
I. FACTUAL BACKGROUND
¶ 7. On October 19, 2009, Betz purchased a 1999 Cadillac Escalade from Diamond Jim's. Betz paid $8,705.98 for the vehicle, including sales tax, title, and license fee. Over the following months, Betz experienced problems with the vehicle, which Diamond Jim's was unable to address to Betz's satisfaction.
*309 ¶ 8. On February 12, 2010, Betz hired Megna to represent him in his dispute with Diamond Jim's. The terms of the fee agreement[3] between Betz and Megna provided, in relevant part:
I understand that I do not have to pay any attorney fees unless my attorneys recover money for me in this case.
FEE SHIFTING
I understand that Sec. 100.18, Wis. Stats.,_is a fee[-]shifting statute. This means if I win at trial or settle my case during litigation, the defendant is usually responsible for paying my attorney fees based on my attorney's hourly rate. I understand that the Law Offices of Vince Megna is accepting my case with the agreement that it will look to the defendant for payment of attorney fees pursuant to the fee[-]shifting provision once a lawsuit has been filed.
SETTLEMENT PRIOR TO LAWSUIT
If a settlement is reached prior to a lawsuit being filed in my case, I understand that the defendant may not be responsible for payment of my attorney fees. In this event, the Law Offices of Vince Megna agrees to charge a flat rate attorney fee in the amount of_.
COSTS AND EXPENSES
I understand that the Law Offices of Vince Megna will need to pay costs and expenses. In the event my case is lost through no fault of my own, I understand that the Law Offices [of] Vince Megna will not bring a claim against me for these costs and expenses.
*310 I understand that if I do not accept a settlement that my attorneys deem reasonable and my case continues without settlement, I will be required to immediately reimburse the Law Offices of Vince Megna for all costs and expenses paid up until that point and then be responsible to pay all further costs and expenses as same become due.
TERMINATION
I understand that my attorney has the right to "terminate" me as a client. The Law Offices of Vince Megna will be entitled to fees for the work done at its hourly rate and its costs, not to exceed 33 1/3% of my gross recovery.
I understand that I have a right to terminate my attorneys. However, if I do so, I will be responsible for the Law Offices of Vince Megna fees and costs due on the date of termination, not to exceed 33 1/3% of my gross recovery.
(bolding omitted) (all blanks in original).
¶ 9. On March 1, 2010, Betz sued Diamond Jim's in Milwaukee County Circuit Court. Betz asserted claims for false advertising, contrary to Wis. Stat. § 100.18 (2009-10),[4] intentional fraudulent misrepresentation and violations of automobile dealership regulations, contrary to Wis. Stat. § 218.0116. In addition to compensatory and punitive damages, Betz also claimed "actual attorney's fees" from Diamond Jim's under fee-shifting statutes §§ 100.18(11)(b)2.[5] and *311 218.0163(2).[6]
¶ 10. On May 17, 2010, Megna, on behalf of Betz, made a settlement offer pursuant to Wis. Stat. § 807.01. The settlement offer sought $10,750 in damages and $5,900 in attorney's fees. The offer stated that the check for attorney's fees should be made payable to Megna's firm. Diamond Jim's rejected this offer through counsel.
¶ 11. On September 28, 2010, counsel for Diamond Jim's made a counter-offer to settle the case by repurchasing the vehicle and paying $2,000 towards Betz's attorney's fees. Megna, on behalf of Betz, rejected this offer.
¶ 12. On April 4, 2011, Betz and Thomas Letizia ("Letizia"), the general manager of Diamond Jim's, met without counsel and settled the case. The settlement agreement provided, in relevant part:
The purpose of this Agreement is the Amicable Resolution of the Action without the need for further litigation, the relinquishment by each of the parties of any claim or cause of action arising from or relating to the issues in the Action, and the mutual release of all liability.
Therefore, in consideration of the following mutual promises and releases made by the Parties as well as other good and valuable consideration, the Parties to this Agreement agree that this Agreement is entered into as a compromise of disputed claims and does not constitute of liability [sic] or obligation whatsoever on behalf of any of the parties pursuant to the respective claims.
*312 The parties agree to solve the action [sic] pursuant to the following specified terms:
A) James Letizia and Diamond Jim's Auto Sales agree to Pay to Randy L. Betz the sum of [$15,000] paid in form of check number 7114;
B) Randy L. Betz hereby agrees that [his suit against Diamond Jim's] [s]hall be dismissed.
¶ 13. On April 5, 2011, counsel for Diamond Jim's learned of the settlement and drafted a letter advising Megna that the case was resolved. The letter referenced the parties' "confidential settlement" agreement and included a draft stipulation to dismiss the case.
II. PROCEDURAL POSTURE
¶ 14. On April 21, 2011, Megna filed three motions with the circuit court. First, Megna asked the circuit court to compel Diamond Jim's to pay statutory attorney's fees pursuant to Wis. Stat. § 100.18(H).[7] Megna argued that the right to recover attorney's fees under the statute belonged to the lawyer and not the client, and that he and his firm were owed $16,808.50 at the time of the settlement. Second, Megna requested leave to amend the complaint and intervene as a plaintiff, arguing that he had a cause of action against Diamond Jim's for intentional interference with a contractual relationship. Third, Megna sought a court order compelling disclosure of the confidential settlement between Betz and Diamond Jim's.
*313 ¶ 15. Diamond Jim's opposed Megna's motions. Diamond Jim's argued that the statutory right to recover attorney's fees belonged to Betz, and that the settlement agreement was a clear and unambiguous contract between the parties and should be enforced. Diamond Jim's asserted that the parties were entitled to settle the case without counsel if they chose, and that while Wis. Stat. § 100.18(11) allows for recovery of attorney's fees, it does not mandate such a recovery in the event of a settlement. Diamond Jim's also argued that the settlement agreement should remain confidential unless the parties agreed to disclose the terms.
¶ 16. On July 26, 2011, the court granted Megna's motion to require disclosure of the confidential settlement agreement. The court held all other motions in abeyance for 30 days to allow the parties the opportunity to negotiate a settlement of the attorney's fee issue. On August 31, 2011, the parties disclosed to the court that they had failed to resolve the dispute. The court then set a briefing schedule for the pending motions.
¶ 17. On September 30, 2011, Diamond Jim's filed a motion for reformation of the contract, or alternatively, for rescission. The filing included an affidavit from Letizia wherein he stated that when he signed the settlement agreement, he believed it resolved the issue of statutory attorney's fees. Diamond Jim's argued that if the settlement agreement did not, in fact, resolve the fee issue, the agreement did not represent a meeting of the minds and should be reformed or rescinded.
¶ 18. On December 8, 2011, the circuit court held a motion hearing. The court determined that the statutory right to recover attorney's fees belonged to Betz and not to his attorneys. The court further concluded that the settlement agreement was a clear, unambigu *314 ous, and binding contract between Betz and Diamond Jim's. As a result, the court denied Megna's motions and dismissed the case.[8]
¶ 19. On January 23, 2012, Megna appealed.[9]
¶ 20. On appeal, Megna argued that the fee-shifting statute did not permit Betz to settle his claims without Megna's knowledge or consent. Megna asserted that the right to collect fees under the statute belonged to the attorney and not the client, and that Diamond Jim's had a duty to refrain from settling without Megna's knowledge or consent. Megna further argued that the public policy underlying fee-shifting statutes would be frustrated if clients were permitted to settle fee-shifting cases without addressing statutory attorney's fees. Finally, Megna argued that it would be inequitable to allow Diamond Jim's to avoid paying statutory attorney's fees in this case.
¶ 21. Diamond Jim's argued that Betz had a right to settle his claims and that right was not conditioned on his attorney's knowledge or consent. Diamond Jim's asserted that the trial court properly relied on contract principles in resolving the issue, and that statutory attorney's fees cannot be awarded under equitable principles. Diamond Jim's further argued that Megna should be seeking attorney's fees from his client, Betz, and not Diamond Jim's.
¶ 22. On October 16, 2012, the court of appeals reversed the circuit court. Betz, 344 Wis. 2d 681, ¶ 1. *315 The court of appeals concluded that the settlement agreement, despite being clear and unambiguous, was void because it was contrary to the public policy behind fee-shifting statutes. Id., ¶ 13. The court of appeals therefore ordered Betz to return the settlement payment and remanded the case to the circuit court for continued litigation. Id., ¶ 14.
¶ 23. Diamond Jim's petitioned this court for review, which we granted on May 10, 2013.
III. STANDARD OF REVIEW
¶ 24. "The interpretation of an unambiguous contract presents a question of law for this court's independent review." Town Bank v. City Real Estate Dev., LLC, 2010 WI 134, ¶ 32, 330 Wis. 2d 340, 793 N.W.2d 476 (citing Admanco, Inc. v. 700 Stanton Drive, LLC, 2010 WI 76, ¶ 15, 326 Wis. 2d 586, 786 N.W.2d 759).
¶ 25. "[T]he application of public policy considerations to a contract" also presents a question of law that this court reviews de novo. Northern States Power Co. v. Nat'l Gas Co., 2000 WI App 30, ¶ 7, 232 Wis. 2d 541, 606 N.W.2d 613 (citing Bowen v. Lumbermens Mut. Cas. Co., 183 Wis. 2d 627, 654, 517 N.W.2d 432 (1994)).
IV ANALYSIS
¶ 26. "[A]n important purpose of fee-shifting statutes is to encourage injured parties to enforce their statutory rights when the cost of litigation, absent the fee-shifting provision, would discourage them from doing so." Kolupar v. Wilde Pontiac Cadillac, Inc., 2007 *316 WI 98, ¶ 55, 303 Wis. 2d 258, 735 N.W.2d 93 (citing Shands v. Castrovinci, 115 Wis. 2d 352, 358, 340 N.W.2d 506 (1983)). Fee-shifting "encourage[s] attorneys to take cases where the pecuniary loss is small in relation to the cost of litigation." Cook v. Pub. Storage, Inc., 2008 WI App 155, ¶ 85, 314 Wis. 2d 426, 761 N.W.2d 645. "For the retail buyer with a claim under [a fee-shifting statute], the cost of the litigation may be significant, and even . . . exceed the total recovery under the statute." Kolupar, 303 Wis. 2d 258, ¶ 37.
¶ 27. "The cumulative effect of minor transgressions is considerable, yet they would not be deterred if fees were unavailable." Fletcher v. City of Fort Wayne, Ind., 162 F.3d 975, 976 (7th Cir. 1998). "If the cost of litigation reduces or even eliminates recovery, retail buyers will be less likely to enforce their rights under the statute." Kolupar, 303 Wis. 2d 258, ¶ 37. Fee-shifting thus prevents "defendants from inflicting with impunity small losses on the people whom they wrong." Orth v. Wisconsin State Employees Union Council 24, 546 F.3d 868, 875 (7th Cir. 2008).
¶ 28. Fee-shifting statutes, and the attorneys who represent clients in such cases, are thus vital to ensuring that the rights of consumers are vindicated in court. The importance of this public policy is not a matter of debate.
¶ 29. Additionally, attorneys who represent clients in fee-shifting cases already take a significant risk that they will not be paid, because they may not "win" a case. Ordinarily, fees are awarded only to a "prevailing party." See, e.g., Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 483 U.S. 711 (1987). While we *317 recognize the important right of a client to settle, if a client has an unfettered right to settle without counsel's involvement when a fee-shifting statute is implicated, otherwise qualified attorneys will be discouraged from practicing in this vitally important area of law.[10]
¶ 30. Nonetheless, the legislature has determined that an award of attorney's fees under Wis. Stat. § 100.18(11) belongs to the "person suffering pecuniary loss." Gorton v. Hostak, Henzl & Bichler, S.C., 217 Wis. 2d 493, 503, 577 N.W.2d 617 (1998). Thus, statutory attorney's fees belong to the client and not the attorney. Given this legislative determination and the public policy considerations implicated in these matters, both the purpose of fee-shifting statutes and the public interest they promote are undermined when a client settles without counsel and that settlement does not provide for recovery of statutory attorney's fees.
¶ 31. In Zeisler v. Neese, the Seventh Circuit was presented with a similar conflict involving a settlement that failed to address the statutory right to recover attorney's fees. 24 F.3d 1000 (7th Cir. 1994). The Seventh Circuit's analysis in Zeisler informs our conclusions in the case at issue and aids us in balancing the competing public policy considerations.
¶ 32. In Zeisler the plaintiff, Carol Zeisler ("Zeisler"), purchased a used car from Neese Motors ("Neese") using dealer financing. Id. at 1001. Zeisler became unhappy with the vehicle and contacted Attorney Barry Barash ("Barash") to represent her in her dispute with Neese. Id. Barash agreed to accept the case *318 on a contingent fee basis, but neglected to execute a fee agreement with Zeisler. Id. Through Barash, Zeisler filed suit against Neese under the Truth in Lending Act, 15 U.S.C. §§ 1601 et seq, a fee-shifting statute.[11] Id.
¶ 33. While the suit was pending, Zeisler defaulted on her financing agreement with Neese, and Neese repossessed the car. Id. Neese offered to provide Zeisler with a different, less expensive vehicle in exchange for her agreement to dismiss the lawsuit. Id. Without consulting Barash, Zeisler agreed to the settlement. Id. The settlement made no reference to attorney's fees. Id. The trial court dismissed the suit over Barash's objections. Id.
¶ 34. On appeal the Seventh Circuit affirmed the trial court. Id. The court concluded that the statutory right to recover attorney's fees belonged to the client and not the attorney, and that the interests of the client were served by encouraging settlement. Id. The court, acknowledging the policy concerns involved, then addressed how attorneys could protect their legitimate interest in receiving payment:
The lawyer can protect himself, moreover, though not perfectly, by entering into a written contract with his client in which the client assigns his statutory right to attorney's fees to the lawyer. Then the lawyer can enforce the right without the participation of his client, as in Samuels v. American Motors Sales Corp., 969 F.2d 573, 576-77 (7th Cir. 1992). If the client makes a settlement with the defendant, waiving attorney's fees, and the defendant has no notice of the assignment — no notice, that is, that the entitlement to attorney's fees is not the plaintiffs to waive — the lawyer can go against *319 his client for breach of contract. If the defendant does have notice of the assignment, the lawyer can go directly against the defendant. Salem Trust Co. v. Manufacturers' Finance Co., 264 U.S. 182, 194 (1924); Production Credit Ass'n v. Alamo Ranch Co., 989 F.2d 413, 417 (10th Cir. 1993).
Id. at 1002.
¶ 35. Thus, practically speaking, under Zeisler so long as the written contract between the lawyer and the client so provides, counsel can seek payment of attorney's fees from the client. Moreover, when the written contract between the lawyer and the client provides for a valid assignment of the right to recover statutory attorney's fees, counsel may pursue such fees from the defendant so long as the defendant had notice of the assignment. In other words, if the parties enter into a private settlement without the involvement of counsel, and the settlement fails to provide for statutory attorney's fees,[12] the defendant may be found responsible for plaintiffs attorney's fees only when the client assigned his or her right to recover statutory attorney's fees to the attorney and the defendant had notice of the assignment.
¶ 36. We adopt the standard, as posed in Zeisler, as an appropriate framework to decide whether Megna can recover his statutory attorney's fees directly from Diamond Jim's under these circumstances.
*320 ¶ 37. At the outset, we note that it is undisputed that neither Megna nor counsel for Diamond Jim's was involved in the April 4, 2011 settlement agreement with Betz. It is likewise undisputed that the settlement agreement between Betz and Diamond Jim's failed to provide for payment of Megna's attorney's fees. Thus, under the facts presented, the crux of the matter before the court, as it was in Zeisler, is (1) whether Betz assigned his statutory right to recover attorney's fees to Megna under the fee agreement, and if so, (2) whether Diamond Jim's had notice of the assignment at the time of the settlement.
¶ 38. Given the fact that Betz and Diamond Jim's settled this case without counsel and without providing for Megna's attorney's fees, we first address whether the fee agreement provided for a valid assignment of the right to recover statutory attorney's fees from Betz to Megna. In order to determine whether Betz assigned his right to recover statutory attorney's fees to Megna under the fee agreement, we look to the fee agreement itself. A fee agreement is a contract. "When construing contracts that were freely entered into, our goal 'is to ascertain the true intentions of the parties as expressed by the contractual language.'" Town Bank, 330 Wis. 2d 340, ¶ 33 (quoting State ex rel. Journal/Sentinel, Inc. v. Pleva, 155 Wis. 2d 704, 711, 456 N.W.2d 359 (1990)).
¶ 39. "In ascertaining the intent of the parties, contract terms should be given their plain or ordinary meaning." Huml v. Vlazny, 2006 WI 87, ¶ 52, 293 Wis. 2d 169, 716 N.W.2d 807. " 'If the contract is unambiguous, our attempt to determine the parties' intent ends with the four corners of the contract, without consideration of extrinsic evidence.'" Town Bank, 330 *321 Wis. 2d 340, ¶ 33 (quoting Huml, 293 Wis. 2d 169, ¶ 52). "Only when the contract is ambiguous, meaning it is susceptible to more than one reasonable interpretation, may the court look beyond the face of the contract and consider extrinsic evidence to resolve the parties' intent." Id. (citing Capital Invs., Inc. v. Whitehall Packing Co., Inc., 91 Wis. 2d 178, 190, 280 N.W.2d 254 (1979)).
¶ 40. Megna argues that Betz assigned his statutory right to recover attorney's fees to Megna under the fee agreement. Alternatively, Megna argues that Betz's right to recover attorney's fees should be equitably subrogated to Megna. In either case, Megna argues that Betz lacked the right to relinquish statutory attorney's fees against Diamond Jim's. Under the logic of Zeisler, Megna's argument is unpersuasive.
¶ 41. "An assignment is the 'manifestation of the assignor's intention to transfer' a right so that the assignee acquires the right to performance by the obligor." Stilwell v. Am. Gen. Life Ins. Co., 555 F.3d 572, 577 (7th Cir. 2009) (quoting Restatement (Second) of Contracts § 317 (1981)). "It is essential to an assignment of a right that the obligee manifest an intention to transfer the right to another person without further action or manifestation of intention by the obligee." Restatement (Second) of Contracts § 324 (1981). No such manifestation exists in the fee agreement at issue.
¶ 42. The terms of the fee agreement indicate that Betz understood that "the defendant is usually responsible for paying" attorney's fees in suits under Wis. Stat. § 100.18. The agreement further provided that Betz's attorneys would "look to the defendant for payment of attorney fees pursuant to the fee [-] shifting *322 provision once a lawsuit has been filed." These qualified statements, however, cannot be fairly characterized as a written assignment of Betz's statutory right to recover fees.
¶ 43. The fee agreement further provides for a number of circumstances where Betz might have to pay for Megna's fees or costs himself. For example, if the case had settled prior to the filing of the lawsuit, Betz would have had to pay a flat rate for Megna's fees. Similarly, if Betz had declined to settle the case on terms his attorneys "deem[ed] reasonable," he would have had to immediately pay all of Megna's costs up to that point and continue to pay further costs as they became due. Finally, the agreement provided that if either Betz or his attorneys terminated the attorney-client relationship, Betz would be responsible for paying both Megna's fees and costs. These provisions provide evidence that Betz did not assign his right to statutory attorney's fees to Megna in the fee agreement. As a result, traditional principles of contract law militate against finding that Betz assigned his right to statutory attorney's fees to Megna.
¶ 44. Similarly, Megna's argument that Betz equitably subrogated his right to recover statutory attorney's fees to counsel is not compelling.
¶ 45. " 'Subrogation is an equitable doctrine invoked to avoid unjust enrichment, and may properly be applied whenever a person other than a mere volunteer pays a debt which in equity and good conscience should be satisfied by another.'" Ocwen Loan Servicing, LLC v. Williams, 2007 WI App 229, ¶ 7, 305 Wis. 2d 772, 741 N.W.2d 474 (quoting Rock River Lumber Corp. v. Universal Mortg. Corp. of Wis., 82 Wis. 2d 235, 240-41, 262 *323 N.W.2d 114 (1978)). Courts are permitted "to grant equitable remedies to private litigants in situations in which there is no explicit statutory authority or in which the available legal remedy is inadequate to do complete justice." Breier v. E.C., 130 Wis. 2d 376, 388, 387 N.W.2d 72, 77 (1986); see also GMAC Mortg. Corp. of Pa. v. Gisvold, 215 Wis. 2d 459, 479-80, 572 N.W.2d 466 (1998).
¶ 46. In the case at issue, we are presented with specific statutory authority which grants the right to recover attorney's fees to the plaintiff. Wis. Stat. § 100.18(11)(b)2. If we were to conclude that the client's right to recover statutory attorney's fees is equitably subrogated to the attorney once counsel is retained, despite a fee agreement that does not clearly assign that right, we would undermine the legislature's explicit directive to the contrary. The legislature has concluded that it is the client's right to recover statutory attorney's fees. The equitable principles espoused by Megna do not trump the language of the agreement or the legislative directive.
¶ 47. Additionally, Megna is not necessarily without a remedy if he is unable to recover directly from Diamond Jim's. Megna could seek payment from Betz under their fee agreement. For these reasons, equitable relief in the form of subrogation is not appropriate in this case.
¶ 48. Further, to the extent this fee agreement could be deemed unclear regarding Megna's right to recover statutory attorney's fees from Betz or Diamond Jim's, "the burden is on the attorney who possesses legal knowledge and who drafts the agreement to state clearly the terms of the fee agreement and to address specifically the allocation of court-awarded attorney *324 fees." Gorton, 217 Wis. 2d at 508; see also Ziolkowski Patent Solutions Grp., S.C. v. Great Lakes Dart Mfg., Inc., 2011 WI App 11, ¶ 13, 331 Wis. 2d 230, 794 N.W.2d 253 (holding that attorneys have the burden to clearly draft their legal fee agreements).
¶ 49. Given that written fee agreements are required, see SCR 20:1.5(c), attorneys are cautioned to clearly draft a fee agreement so that it unambiguously assigns the client's statutory right to recover attorney's fees from the defendant under these circumstances. As discussed, vital public policy interests are at stake.
¶ 50. A clear fee agreement not only protects the attorney, but also protects the client and avoids conflict. A more clearly drafted fee agreement in the case at issue would have resolved the problem without the necessity of additional litigation.
¶ 51. Because Megna's fee agreement failed to clearly secure an assignment from Betz in the case at issue, his remedy against Diamond Jim's is foreclosed.
¶ 52. Finally, because we conclude that the fee agreement does not provide for a valid assignment of Betz's right to recover statutory attorney's fees to Megna, we conclude that the second Zeisler criterion cannot be met. Because there was no assignment between Betz and Megna, Diamond Jim's could not know of the assignment. As a result, the Zeisler test is not met in this regard either.
V CONCLUSION
¶ 53. We conclude that the statutory right to recover attorney's fees belonged to Betz, and that Betz did not assign his right to recover those fees to Megna in their fee agreement. Because we conclude that Betz *325 did not assign his right to recover statutory attorney's fees to Megna, we must conclude that Diamond Jim's could not have had notice of the assignment. As a result, we conclude that Megna may not seek statutory attorney's fees directly from Diamond Jim's, and that the settlement agreement entered into between Diamond Jim's and Betz is clear, unambiguous, and enforceable. We therefore reverse the court of appeals.

By the Court.

The decision of the court of appeals is reversed.
¶ 54. PATIENCE DRAKE ROGGENSACK, J, did not participate.

 The Honorable Maxine A. White presided.

 Several attorneys with the law firm of Aiken & Scoptur, S.C., including Megna, worked on Betz's case. All these attorneys seek to recover statutory attorney's fees from Diamond Jim's. For the sake of simplicity, this opinion will refer only to Megna.

 The fee agreement referenced "The Law Offices of Vince Megna" rather than Megna's firm, Aiken & Scoptur. The parties have not addressed the impact, if any, of this distinction, and we therefore ignore it for purposes of this opinion.

 All subsequent references to the Wisconsin Statutes are to the 2009-10 version unless otherwise indicated.

 Wisconsin Stat. § 100.18(11)(b)2. provides, in relevant part:
Any person suffering pecuniary loss because of a violation of this section by any other person may sue in any court of competent *311 jurisdiction and shall recover such pecuniary loss, together with costs, including reasonable attorney fees,....

 Wisconsin Stat. § 218.0163(2) provides, in relevant part:
Any retail buyer, lessee or prospective lessee suffering pecuniary loss because of a violation by a licensee. . . may recover damages for the loss in any court of competent jurisdiction together with costs, including reasonable attorney fees.

 While Betz's suit included claims under two different fee-shifting statutes, Wis. Stat. §§ 100.18 and 218.0163, Megna's motion referenced only § 100.18.

 Although the court stated in its December 8 order denying Megna's motion that the order was final and appealable, it did not enter an order dismissing the suit until January 9, 2012.

 Megna's notice of appeal indicated that he was appealing from the circuit court's December 8, 2011 order denying his motions, rather than the January 9, 2012 order dismissing the suit.

 For example, the record reflects that Megna is one of only a handful of attorneys in Wisconsin who takes automobile consumer rights cases.

 The Truth In Lending Act provides that a creditor violating the statute is liable for "a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1640(a)(3).

 Although the Zeisler court used the term "waiver," we expressly avoid that term in our statement of the standard. This is because the term "waiver" under Wisconsin law is the "intentional relinquishment of a known right." See, e.g., Brunton v. Nuvell Credit Corp., 2010 WI 50, ¶ 37, 325 Wis. 2d 135, 785 N.W.2d 302. The attorney's right to be paid, however, was not explicitly addressed in the settlement agreement in Zeisler, or in the case at issue.