# COURT OF APPEALS
## DECISION
## DATED AND FILED

## April 16, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1408**

Cir. Ct. No. **2018SC2876**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT IV**

---

**MARWOOD CORPORATION AND GLORIA WOODMAN SURVIVOR'S TRUST, JEFFREY WOODMAN, TRUSTEE,**

   **PLAINTIFFS-APPELLANTS,**

  V.

**JANESVILLE SPATZ LIMITED PARTNERSHIP (REGISTERED NAME) A/K/A JANESVILLE ASSOCIATES LIMITED PARTNERSHIP (PARTNERSHIP NAME),**

   **DEFENDANT-RESPONDENT.**

---

APPEAL from an order of the circuit court for Rock County: KARL HANSON, Judge. *Affirmed*.

¶1      FITZPATRICK, P.J.[1] Marwood Corporation and the Gloria Woodman Survivor's Trust, by its trustee, Jeffrey Woodman (which will be referred to collectively as "Marwood"), appeal an order of the Rock County Circuit Court denying Marwood's motion for summary judgment on Marwood's eviction claim against Janesville Spatz Limited Partnership ("Spatz") and granting Spatz's request on summary judgment that Marwood's eviction claim be dismissed.[2] The circuit court determined that Marwood is equitably estopped from asserting its eviction claim against Spatz.

¶2      I affirm the circuit court's summary judgment order, but for a reason different than that given by the circuit court. I conclude that Marwood's eviction claim fails because Marwood was required to provide to Spatz a notice of default

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(a) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] Marwood asserted claims against Spatz for breach of contract and unjust enrichment. Those claims were also dismissed by the circuit court. Marwood does not challenge on appeal the dismissal of its unjust enrichment claim. *See State v. Allen*, 2004 WI 106, ¶26 n.8, 274 Wis. 2d 568, 682 N.W.2d 433 (stating that an issue not argued is forfeited). Marwood does, however, assert that the circuit court erred by dismissing the breach of contract claim, but fails to develop a separate argument explaining why dismissal of that claim was an error. Assertions that are not supported by reasons or legal authority will not be decided on appeal. *State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (appellate courts do not decide issues that are inadequately briefed). Accordingly, I do not address whether those two claims were properly dismissed on summary judgment and will not mention those claims again.

In addition, Spatz sought on summary judgment a declaration by the circuit court as to: (1) the amount presently owing to Marwood under the terms of the lease agreement between the two parties; and (2) the monthly rent rate for the leased premises as of July 20, 2018. The circuit court denied Spatz's request that the court determine the total amount owing under the parties' lease, but granted the motion as to the determination of the rental rate as of July 20, 2018. Following the circuit court's summary judgment ruling, the parties reached an agreement regarding the amount owing from Spatz, and Spatz withdrew its request for a declaration by the court concerning the amount of unpaid rent. The court's summary judgment rulings as to those issues are not challenged on appeal.

to terminate the tenancy pursuant to WIS. STAT. § 704.17(3)(a), but failed to provide proper notice under that statute.

## BACKGROUND

¶3 The following material facts are taken from the summary judgment submissions of the parties and are not in dispute.

¶4 In August 1994, Lawrence Woodman, Gloria Woodman, and Marwood Corporation (those two persons and that corporation will be referred to collectively as "the Lessors") entered into a lease with Spatz[3] for a parcel of real estate located in Janesville. The Lessors leased the real estate to Spatz for a period of twenty years. According to the terms of the lease, the lease automatically extended for eight consecutive five-year periods.

¶5 The lease specifies annual rent, to be paid in equal monthly installments, for the first ten years of the lease.[4] The lease provides that on October 1, 2004, and every five years thereafter, the initial annual base rate increases according to a formula specified in the lease. The formula uses the Consumer Price Index and is subject to a minimum and maximum increase. In addition to the annual base rate, Spatz agreed to pay as "additional monthly rent" a specified monthly amount for sewer costs.

¶6 The lease provides in paragraph 4 that "[t]he rent, and all other sums payable by [Spatz] … [under the lease] shall be paid without notice, demand,

---

[3] More specifically, the Lessors entered into a lease with Janesville Associates Limited Partnership, which the parties agree is also known as Janesville Spatz Limited Partnership.

[4] For convenience, I will refer this as the "initial annual base rate."

3

counterclaim, set off, deduction or defense and without abatement, suspension, deferment, or reduction." The lease also provides in paragraph 4 that "[a]ny rental payment not made by the tenth of the month shall be subject to a late fee of One Hundred Dollars ($100.00)" and that "[i]f more than two (2) payments per calendar year are more than ten (10) days late it may be considered an act of default by [the] Lessor[s] and [the] Lessor[s] shall have the right to terminate this Lease without further notice to [Spatz]."

¶7      The Lessors and Spatz disputed how much the initial annual base rate was to increase in October 2004, but later agreed on an amount. After the Lessors and Spatz agreed on that increased base rate amount, Spatz paid rent thereafter at that agreed-upon increase to the initial annual base rate until August 2018.

¶8      The second increase to the initial annual base rate was to take place on October 1, 2009. Spatz did not increase its monthly rent payments and, instead, continued to pay the annual base rate amount agreed to in 2004. The Lessors did not at that time demand an increase to the monthly rent payments paid by Spatz.

¶9      In February 2013, the parties entered into an "Addendum to Lease Agreement," which increased the number of five-year lease extension periods from eight to nine, allowing Spatz to lease the property, potentially, until 2059. At the time the Addendum was entered into, neither party raised the issue of Spatz's failure to increase its rental payments in 2009.

¶10      Another increase to the initial annual base rate was, according to the terms of the lease, to take place on October 1, 2014. Spatz did not increase its monthly rent payments at that time and continued to pay the rate agreed to in

October 2004. The Lessors did not at that time demand an increase in Spatz's monthly rent payments.

¶11 Lawrence Woodman and Gloria Woodman are both deceased, and their interests in the leased property were transferred to trusts(s).[5] Following Gloria's death, an audit of the lease with Spatz was undertaken as part of the accounting of the assets of the Gloria Woodman Survivor's Trust. The audit revealed that Spatz had not increased the rental payments in 2009 or 2014 as required by the lease and, as a result, owed Marwood back rent.

¶12 On May 14, 2018, Marwood's counsel sent a letter to Spatz.[6] The May 14 letter stated in relevant part that an audit of the lease by Marwood had "revealed a substantial amount of back rent is due and owing" from Spatz. The letter stated that, for the 60-month time period between October 2009 and September 2014, Janesville Spatz's monthly rental shortfall was $691.20. The May 14 letter further stated that the monthly unpaid rent plus the $100 monthly late fees totaled $80,151.41 in underpayment in rent by Spatz for that time period. The letter also alleged that, from October 2014 through April 2018, Spatz's monthly rental shortfall was $1,486.89 and calculated the total owing by Spatz for that time period to be $167,051.61. The May 14 letter went on to state that "[t]his includes annual interest of 18%, which makes the total underpayment $247,161.02," which under the terms of the lease "must be paid within 10 days."

---

[5] The record is not clear as to which trust Lawrence's and Gloria's interests went, but the parties do not raise this question on appeal. So, I will ignore it.

[6] In an unoriginal fashion, I will refer to counsel's May 14, 2018 letter as the "May 14 letter."

The May 14 letter concluded by stating: "In any event, we certainly expect payment within 30 days from this notification."

¶13 Spatz responded to the May 14 letter by email on May 17, 2018. Spatz stated that it believed that "[t]he lease is not in default until [Marwood] claim[s] it is, which is possibly May 14th." Spatz further contended that, if the May 14 letter was a notice of default, the notice was "deficient." Spatz also stated in the email that recovery of any underpayments prior to May 14, 2012, is barred by a statute of limitations[7] and that Spatz intended on remedying any deficiency.

¶14 On June 14, 2018, Marwood's attorney sent a second letter to Spatz.[8] In the June 14 letter, Marwood's attorney stated that "it is possible that we may concede that interest may not be owed on the late payments," provided Spatz "agree[d] to conclude this matter quickly," but that Woodman would charge Spatz "late fees … since [Spatz] agreed by contract in 1994 to pay [those] fees." The June 14 letter also contended that, if Spatz did not pay Marwood $118,840.05, an amount Marwood asserted would bring current payments under the lease, Woodman "will immediately terminate the Lease."

¶15 On July 2, 2018, Marwood sent Spatz a Notice Terminating Tenancy. Marwood stated in that July 2 Notice that the lease was terminated for breach of the agreement by Spatz and Spatz's failure to pay rent in full. Marwood demanded in the Notice that Spatz vacate the leased property within ten days. The Notice cites to WIS. STAT. § 704.17(3)(a) as a basis for the Notice. The Notice

---

[7] The parties do not dispute on appeal that a six-year statute of limitations bars Marwood from recovering unpaid rent prior to July 20, 2012. *See* WIS. STAT. § 893.43.

[8] Going forward, I will refer to the June 14, 2018 letter as the "June 14 letter."

also contends that Spatz was served with "30-day notices to pay back rent … on both May 14, 2018 and June 14, 2018."

¶16 Spatz did not vacate the leased premises and Marwood filed a claim against Spatz for eviction. Marwood alleged in its complaint that Marwood was owed $93,568.14 from Spatz for underpaid rent and late fees. Spatz asserted various affirmative defenses, including that notice from Marwood was improper under WIS. STAT. § 704.17. Spatz filed a counterclaim against Marwood, seeking a declaratory judgment concerning Spatz's rights and obligations under the lease.[9]

¶17 Marwood and Spatz each filed motions for summary judgment. Pertinent to this appeal, the circuit court denied Marwood's motion for summary judgment. The court determined that Marwood was equitably estopped from asserting its eviction claim against Spatz. The court granted summary judgment in favor of Spatz as to Marwood's eviction claim and dismissed Marwood's complaint.

¶18 Marwood appeals. Other undisputed material facts will be mentioned in the following discussion.

## DISCUSSION

¶19 The discrete issue before this court is whether the circuit court erred in dismissing, on summary judgment, Marwood's eviction claim against Spatz. I

---

[9] Marwood filed its action before the small claims court which provides an expedited procedure for eviction. *See generally McQuestion v. Crawford*, 2009 WI App 35, ¶13, 316 Wis. 2d 494, 765 N.W.2d 822. However, pursuant to WIS. STAT. § 799.02, after Spatz counterclaimed against Marwood, the action was removed from small claims court and was not litigated using the small claims procedures but was, instead, litigated under the procedures set forth in WIS. STAT. chs. 801-847.

7

conclude that Marwood's eviction claim fails because the undisputed material facts establish that Marwood was required to provide Spatz with notice of termination of the tenancy under WIS. STAT. § 704.17(3)(a) but failed to provide such notice. Because the determination that Marwood failed to provide proper notice is determinative, I do not reach the question of whether Marwood's eviction claim is equitably estopped. *Cholvin v. DHFS*, 2008 WI App 127, ¶34, 313 Wis. 2d 749, 758 N.W.2d 118 (stating that, if a decision on one point disposes of the appeal, this court need not decide other issues raised).

¶20    Below, I set out the standard of review and explain summary judgment methodology.

## I.  Standard of Review and Summary Judgment Methodology.

¶21    Appellate courts review the grant or denial of summary judgment de novo, using the same methodology employed by the circuit court. *Bank of N.Y. Mellon v. Klomsten*, 2018 WI App 25, ¶31, 381 Wis. 2d 218, 911 N.W.2d 364. Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2); *Bank of N.Y. Mellon*, 381 Wis. 2d 218, ¶31.

¶22    Courts view summary judgment materials in the light most favorable to the non-moving party. *Affeldt v. Green Lake Cty.*, 2011 WI 56, ¶59, 335 Wis. 2d 104, 803 N.W.2d 56. However, the non-moving party "must set forth 'specific facts,' evidentiary in nature and admissible in form, showing that a genuine issue exists for trial." *Helland v. Kurtis A. Froedtert Mem'l Lutheran Hosp.*, 229 Wis. 2d 751, 756, 601 N.W.2d 318 (Ct. App. 1999). In this appeal, the parties do not dispute the material facts.

¶23    This appeal requires construction of the lease. The application of undisputed facts to the terms of a lease presents a question of law that is reviewed de novo. *See Walters v. National Prop., LLC*, 2005 WI 87, ¶6, 282 Wis. 2d 176, 699 N.W.2d 71. If language of the lease is clear and unambiguous, the lease is construed as it stands without consideration of extrinsic evidence. *See Betz v. Diamond Jim's Auto Sales*, 2014 WI 66, ¶39, 355 Wis. 2d 301, 849 N.W.2d 292.

¶24    This appeal also requires interpretation of statutes. The interpretation of a statute begins with the statutory text, which is given its common, ordinary, and accepted meaning, except that technical or specially defined words are given their technical or special definitions. *State v. Warbelton*, 2008 WI App 42, ¶13, 308 Wis. 2d 459, 747 N.W.2d 717. If the meaning of a statute is clear from its language, this court is prohibited from looking beyond such language to ascertain the statute's meaning. *Lake City Corp. v. City of Mequon*, 207 Wis. 2d 155, 163, 558 N.W.2d 100 (1997).[10]

### II.  Marwood is Not Entitled to the Eviction of Spatz.

¶25    I now set forth the legal principles that govern evictions and then address the parties' arguments.

### A.  Governing Legal Principles.

¶26    The procedure for evicting a tenant who fails to pay rent or otherwise breaches a term of a lease is governed by statute. *Walters*, 282 Wis. 2d 176, ¶7. Under WIS. STAT. § 799.40, an eviction action may be commenced by a

---

[10]  Neither party contends that any provision of WIS. STAT. § 704.17 is ambiguous.

person entitled to possession of real property in order to remove from that property any person who is not entitled to either the possession or occupancy of such real property. Relevant to this appeal, the party claiming entitlement to possession of the real property must prove that proper notice terminating the lease was given before the eviction action was commenced. *See **Clark Oil & Refining Corp. v. Leistikow***, 69 Wis. 2d 226, 234-35, 230 N.W.2d 736 (1975); *see also* WIS. STAT. § 704.17 (governing notice to terminate a tenancy).

¶27    Proper notice for termination of a tenancy under a lease for more than one year is governed by WIS. STAT. § 704.17(3)(a). Section 704.17(3)(a) provides that, if a tenant under a lease for more than one year fails to pay rent, a minimum thirty-day tenancy termination notice and the right to remedy the default must be provided to the tenant before the tenancy is terminated and an eviction action may proceed. More specifically, that statutory subpart provides:

> If a tenant under a lease for more than one year fails to pay rent when due … or breaches any other covenant or condition of the tenant's lease, *the tenancy is terminated if the landlord gives the tenant notice requiring the tenant to pay the rent ... or otherwise comply with the lease on or before a date at least 30 days after the giving of the notice*, and if the tenant fails to comply with the notice.

Sec. 704.17(3)(a) (emphasis added).

¶28    However, under WIS. STAT. § 704.17(5)(a), parties to a lease for more than one year may, in effect, override the § 704.17(3)(a) notice requirement by setting forth termination provisions in the lease that are contrary to subsection (3). ***Walters***, 282 Wis. 2d 176, ¶7. Section 704.17(5)(a) provides:

10

"Except as provided in par. (b),[11] provisions in the lease or rental agreement for termination contrary to this section are invalid except in leases for more than one year."

¶29    Marwood argues that, under the terms of the lease, it was not required to provide notice to Spatz before terminating the lease. Alternatively, Marwood argues that, even if notice under WIS. STAT. § 704.17(3)(a) was required, proper notice was provided.

### B.  Notice Was Required Under WIS. STAT. § 704.17(3)(a).

¶30    To repeat, WIS. STAT. § 704.17(3)(a) requires that notice to terminate the tenancy be provided to a tenant under a lease that exceeds one year, and § 704.17(5)(a) gives lessors and tenants under a lease for more than one year the right to override that notice requirement by including provisions in the lease that are contrary to subsection (3). Marwood asserts that the lease with Spatz contains provisions that override the notice requirements of § 704.17(3)(a) and, in support, points to the following provisions in the lease:

> 4. Rental
>
> ….
>
> ... Lessee covenants and agrees that it will pay annual rent to Lessor during the first ten (10) years, commencing October 1, 1994 (the "initial Rent Period" also referred to as the "Rent Commencement Date" or "Commencement Date"), in the amount of $42,578.58 (the "Initial Annual Base Rent"), payable in equal monthly installments of $3,548.21. All subsequent rental payments

---

[11] WISCONSIN STAT. § 704.17(5)(b) provides: "Provisions in any lease or rental agreement for termination contrary to sub. (3m) are invalid." Section 704.17(3m) addresses criminal activity in the leasehold and is not applicable here.

11

shall be due and payable in advance without demand on the first day of each month during the term of this Ground Lease and any renewals thereof.

….

Any rental payment not made by the tenth of the month shall be subject to a late fee of One Hundred Dollars ($100.00). If payment is made by certified mail, return receipt requested, then payment will be considered to have been made on the date of the mailing. If more than two (2) payments per calendar year are more than ten (10) days late it may be considered an act of default by Lessor and Lessor shall have the right to terminate this Lease without further notice to Lessee.

….

16. Remedies Upon Default

In the event Lessee defaults as provided in paragraphs 4, 14 or 15, above, and said default is not cured as therein provided, then and in any such event, the Lessor may, without further notice or demand:

….

B. Declare this Lease forfeited and void and may thereafter reenter and take full possession of said Premises as the owner thereof, and free from any right or claim of the Lessee or any person or persons claiming through or under the Lessee.

¶31 Before considering Spatz's arguments, I observe that Marwood's July 2, 2018 termination notice is irreconcilable with Marwood's current position. That notice concedes that the provisions of WIS. STAT. § 704.17(3)(a) apply and a 30-day notice was required. More particularly, that notice drafted by Marwood states: "Pursuant to Sections 4 and 14, *and* [§] 704.17(3)(a), [] this Notice terminates your tenancy of the below-described property ('Property'), based on your breach of the Lease and failure to pay full amounts due and owing to the

Landlord of the Property."[12] (Emphasis added.) The notice continues: "For your information, you were served with 30-day notices to pay back rent under this year-to-year Lease on both May 14, 2018 and June 14, 2018." If the 30-day notice requirement in § 704.17(3)(a) did not apply, and if no notice was required under the terms of the lease in order to terminate the lease (as Marwood now argues), then the July 2, 2018 notice to terminate the tenancy would not have been worded in that manner. Marwood recognized the applicability of that statutory subpart and that a 30-day notice was required under § 704.17(3)(a). Marwood's current arguments to the contrary are unavailing.

¶32    In response to Marwood's assertion that no notice to terminate the tenancy was required under the lease, Spatz makes several arguments. First, Spatz contends that the language in paragraph 4 of the lease specifying that rent is due each month "without demand" does not supersede WIS. STAT. § 704.17(3)(a). Rather, according to Spatz, that verbiage "simply means rent is due each month and Marwood does not have to come knocking in order to collect." Marwood makes no viable argument otherwise. So, I conclude that the unambiguous language in paragraph 4 does not support Marwood's arguments.

¶33    Second, Spatz argues that the lease provisions in paragraphs 4 and 16 specifying that Marwood may consider Spatz in default in certain circumstances "without further notice" fails to address what happens before that point in time, but "clearly contemplates that some notice is required" before that

---

[12] As noted, Paragraph 4 of the lease concerns the amount of rent due. The parties do not mention Paragraph 14 of the lease in briefing in this court, and I will also not consider it.

time.  Spatz further contends that the lease is silent regarding that notice and, therefore, WIS. STAT. § 704.17(3)(a) must govern.

¶34    I agree with Spatz.  Language in the lease stating that Marwood can consider Spatz to be in default "without *further* notice" anticipates that some type of notice was previously given after Spatz failed to comply with the lease terms. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 924 (1993) (defining the word "further" as "additional").  However, as pointed out by Spatz, the lease does not contain any provision addressing that initial notice.  Absent any such provision, the notice requirements set forth in WIS. STAT. § 704.17(3) govern. *See* § 704.17(5); *see also **Walters***, 282 Wis. 2d 176, ¶7 (stating that § 704.17(3)(a) is superseded if the lease contains termination provisions contrary to § 704.17(3)(a)). Accordingly, I conclude that Marwood was required to provide notice under § 704.17(3)(a) to Spatz before termination of the lease and commencement of the eviction action.

## C.  Marwood Did Not Provide Proper Notice Under
## WIS. STAT. § 704.17(3)(a).

¶35    Marwood argues that, if it was required to provide notice under WIS. STAT. § 704.17(3)(a), Marwood's May 14 letter satisfies the statutory notice requirements.[13]  The contents of the May 14 letter are not in dispute.  Where the facts are not in dispute, and the inferences are certain, the question of whether a

---

[13] For good reason, Marwood does not argue on appeal that Marwood's June 14 letter provided notice consistent with WIS. STAT. § 704.17(3)(a).  Notably, the June 14 letter states that it is "'for negotiating purposes' and cannot be used in court."  Therefore, I do not address whether that letter satisfies the notice requirements of § 704.17(3)(a). *See **Allen***, 274 Wis. 2d 568, ¶26 n.8 (stating that an issue not argued on appeal is not addressed).

notice was given presents a question of law. *See **Parrish v. Phillips***, 229 Wis. 439, 444, 282 N.W. 551 (1938). This court reviews questions of law independently of the decision of the circuit court. *See **Bennett v. West Bend Mut. Ins. Co.**,* 200 Wis. 2d 313, 316, 546 N.W.2d 204 (Ct. App. 1996).

¶36 WISCONSIN STAT. § 704.17(4m) is important to the analysis and states:

> EFFECT OF INCORRECT AMOUNT IN NOTICE. A notice for failure to pay rent or any other amount due under the rental agreement that includes an incorrect statement of the amount due is valid unless any of the following applies:
>
> (a) The landlord's statement of the amount due is intentionally incorrect.
>
> (b) The tenant paid or tendered payment of the amount the tenant believes to be due.

¶37 Spatz contends that, by demanding interest on the rent arrears and late fees, Marwood's May 14 letter "intentionally overstated [its] demand[]." More specifically, Spatz asserts that, because the May 14 letter demanded an amount due that was intentionally incorrect, under WIS. STAT. § 704.17(4m) the letter cannot, as a matter of law, serve as notice under § 704.17(3)(a).[14] I again agree with Spatz.

¶38 For its part, Marwood does not dispute Spatz's clear assertion in briefing in this court that, in the May 14 letter, the stated amount due was

---

[14] Additionally, Spatz argues that the May 14 letter was not sufficient notice under WIS. STAT. § 704.17(3)(a) because it "paid the amount of rent it believed was due." I do not reach this issue because I conclude that the May 14 letter did not provide proper notice under § 704.17(3)(a). ***Cholvin v. DHFS***, 2008 WI App 127, ¶34, 313 Wis. 2d 749, 758 N.W.2d 118 (stating that if a decision on one point disposes of the appeal, we will not decide other issues raised).

intentionally incorrect. Further, Marwood does not contend on appeal that the question of whether the May 14 letter is "intentionally incorrect" about the amount due is a disputed issue of fact requiring a trial. In fact, Marwood concedes at least four times in briefing in this court that the interest demanded in the May 14 letter was "impermissible."

¶39 Other points confirm Spatz's contention. First, Marwood does not assert in this court that there is any basis in the lease or a statute for the demand in the May 14 letter for 18% interest due on the back payments. Second, Marwood's June 14 letter stated that the 18% interest demand would be withdrawn only if Spatz agreed to the other amounts Marwood claimed were due. Third, Marwood now concedes that, because of the applicable statute of limitations, there was no basis in the May 14 letter to demand payments due more than six years before the date of that letter. Fourth, the amount demanded by Marwood dropped from about $247,000 in the May 14 letter to about $118,000 in the June 14 letter to about $93,000 in the eviction complaint.

¶40 Marwood attempts to salvage the validity of the May 14 letter by arguing that the letter was nevertheless sufficient as notice of default under WIS. STAT. § 704.17(3)(a) because the letter conveyed the necessary information to inform Spatz that it had failed to pay rent when due and that Marwood was demanding that Spatz's default be cured within 30 days. However, the cases cited by Marwood provide no support for its argument. *City of La Crosse* concerned the sufficiency of notice that must be given to a town that is alleged to be liable for the support of a pauper. *City of La Crosse v. Town of Melrose*, 22 Wis. 459, 461-62 (1868). *Kruse* concerned the sufficiency of a notice of a claim of injury that was required to be served on a potential defendant before an action to recover damages could be brought. *Kruse v. Miller Brewing Co.*, 89 Wis. 2d 522, 528-29,

16

279 N.W.2d 198 (1979). Neither case addresses the sufficiency of notice provided to a tenant under § 704.17(3)(a). Additionally, neither case addresses the sufficiency of notice where a statute specifies the information that must be included in the notice.

¶41 WISCONSIN STAT. § 704.17(4m) is plain and unambiguous. If the stated amount owed is intentionally incorrect, the notice is not valid. The May 14 and June 14 letters were probably good negotiation tactics, but there is no dispute of material fact that the stated amount owed in the May 14 letter was "intentionally incorrect" in the context of § 704.17(4m). Accordingly, I conclude that the May 14 letter was not proper notice of termination of the tenancy under § 704.17(3)(a), and Marwood's eviction claim fails.

## CONCLUSION

¶42 For the foregoing reasons, the order of the circuit court is affirmed.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

17