COURT OF APPEALS
DECISION
DATED AND FILED

March 13, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos. **2023AP124**
**2023AP1333**
**STATE OF WISCONSIN**

Cir. Ct. No. 2019CV994

**IN COURT OF APPEALS**
**DISTRICT IV**

---

LANDMARK CREDIT UNION,

    PLAINTIFF-RESPONDENT,

  V.

RALPH W. STREULY,

    DEFENDANT-APPELLANT,

REPOSSESSORS INC.,

    DEFENDANT.

---

        APPEALS from a judgment and an order of the circuit court for Rock County: JEFFREY S. KUGLITSCH, Judge. *Affirmed*.

        Before Graham, Nashold, and Taylor, JJ.

        **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Ralph Streuly purchased a vehicle that was financed by Landmark Credit Union ("Landmark"). These appeals arise out of a replevin action filed by Landmark against Streuly after Streuly defaulted on the loan agreement for the vehicle, which was assigned to Landmark and secured by the vehicle.[1]   Streuly counterclaimed, alleging violations under the Wisconsin Consumer Act, specifically, unconscionability under WIS. STAT. § 425.107 and illegal debt collection practices under WIS. STAT. § 427.104.[2]    Streuly's unconscionability claim against Landmark was dismissed on Landmark's motion for summary judgment, but Streuly's claim that Landmark engaged in illegal debt collection practices survived summary judgment and was scheduled for trial.

¶2     Prior to trial, the circuit court granted Landmark's motion in limine to prohibit Streuly from presenting evidence at trial regarding the attempts of Repossessors, Inc. ("Repossessors") to repossess, as Landmark's alleged agent, the vehicle securing the loan.  The jury subsequently found that Landmark engaged in illegal debt collection practices in violation of WIS. STAT. § 427.104(1)(g), and awarded Streuly $1,500 in damages.  After the trial, the court entered a deficiency judgment in favor of Landmark for the amount that Streuly owed related to the purchase of the vehicle.  The court also awarded Streuly attorney fees and offset the deficiency judgment in favor of Landmark against the total judgment awarded to Streuly.

---

[1] These appeals were consolidated for briefing and disposition by an order dated August 2, 2023.  *See* WIS. STAT. RULE 809.10(3) (2021-22).  All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] *See* WIS. STAT. § 421.101 ("Chapters 421 to 427 shall be known and may be cited as the Wisconsin consumer act.").

¶3      On appeal, Streuly challenges the circuit court's decision on summary judgment to dismiss his WIS. STAT. § 425.107 unconscionability claim, the court's decision to prohibit Streuly from presenting evidence regarding the actions of Repossessors, the amount of attorney fees that the court awarded following the trial, and the court's decision to offset the judgment entered in favor of Landmark against the judgment entered in favor of Streuly.  For the reasons stated below, we affirm.

## BACKGROUND

¶4      The following facts are derived from the summary judgment materials and the evidence presented at trial and are undisputed unless otherwise noted.

¶5      Streuly purchased a 2011 Ford Ranger from Janesville Autos, LLC, ("the dealership") in August 2016.  The purchase price of the Ranger was $12,806.  Streuly traded in a vehicle and also purchased a service package and GAP insurance,[3] resulting in the total amount financed being $20,704.16.  The purchase was financed through Landmark, and the dealership assigned the loan and security interest to Landmark.

¶6      Streuly purchased the Ranger, which was two-wheel drive, even though he had gone to the dealership intending to purchase a full-size truck with four-wheel drive.  At the dealership, Streuly learned that he was not eligible to

---

[3] GAP insurance, or "guaranteed-asset-protection insurance," is "automobile insurance that protects the insured against the difference between what an asset (such as an automobile) is worth and what the insured owes on it," and "applies when an asset is stolen and never recovered or is declared a total loss from an accident."  *Insurance*, BLACK'S LAW DICTIONARY (12th ed. 2024).

purchase a full-size, four-wheel-drive truck given his income and credit rating. The dealership told Streuly that if Streuly bought the Ranger and came back in a year, the dealership would "give [Streuly] a deal" on a full-size, four-wheel-drive truck. Streuly returned the next year hoping to buy a full-size, four-wheel-drive truck, but instead purchased a Kia Forte. A separate action, relevant for reasons discussed below, arose out of that transaction.

¶7 Streuly stopped making payments on the Ranger in August 2018 after he lost his job, and Landmark contracted with Repossessors to repossess the Ranger.[4] A Repossessors agent drove by Streuly's house numerous times to see if the Ranger was there. On one occasion, the agent stopped and spoke with Streuly because the agent observed an older Ford Ranger in Streuly's driveway that was different from the Ranger that secured Streuly's loan and that Repossessors was attempting to repossess, but that had the same license plates.[5] After a short conversation with Streuly, the agent left without repossessing the Ranger.

¶8 Landmark also called Streuly in an attempt to collect payments or repossess the Ranger. Landmark's agents spoke with Streuly over the phone on four occasions and left voicemails on several others. Landmark called Streuly even after Streuly informed Landmark that he had an attorney and that Landmark should speak with his attorney.

---

[4] On appeal, Streuly states that he "began missing payments just a few months after the purchase, in December 2016." However, as Landmark points out, Streuly's citation to the record in support of this assertion shows only that Streuly made a late payment in 2016, and Streuly's deposition testimony, Landmark's records, and other evidence in the record otherwise show that Streuly stopped making payments on the Ranger in August 2018.

[5] Streuly had taken the license plates off the Ranger that Landmark was attempting to repossess—which Streuly had parked in his closed garage, where it could not be seen—and put those plates on an older Ford Ranger that Streuly owned, which was visible in his driveway.

4

¶9     Eventually, Landmark initiated a replevin action against Streuly. Streuly counterclaimed, alleging that the transaction was unconscionable under WIS. STAT. § 425.107 and thus unenforceable.[6]   Streuly also alleged that Repossessors had engaged in conduct for which Landmark, as Repossessors' agent, was indirectly liable.   Specifically, Streuly alleged that Repossessors engaged in illegal debt collection practices, in violation of WIS. STAT. § 427.104(1)(g) and (h), by engaging in conduct and communication that could reasonably be expected to threaten or harass Streuly.  Additionally, Streuly alleged that Repossessors violated § 427.104(1)(j) when it threatened to enforce a nonexistent right by continuing to attempt to repossess the Ranger after there was a breach of the peace.[7]

¶10    Landmark responded to Streuly's counterclaims by amending its complaint to add Repossessors as defendants.  Landmark alleged that its contract

---

[6] WISCONSIN STAT. § 425.107(1) states:

> With respect to a consumer credit transaction, if the court as a matter of law finds that any aspect of the transaction, any conduct directed against the customer by a party to the transaction, or any result of the transaction is unconscionable, the court shall … either refuse to enforce the transaction against the customer, or so limit the application of any unconscionable aspect or conduct to avoid any unconscionable result.

[7] Under WIS. STAT. § 427.104(1)(g), (h) and (j), respectively, a debt collector may not "[c]ommunicate with the customer … with such frequency or at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer"; "[e]ngage in other conduct which can reasonably be expected to threaten or harass the customer"; or "[c]laim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

Although Streuly's counterclaim did not state the specific statutory provisions that he was alleging Repossessors violated as Landmark's agent, based on the language used in Streuly's counterclaim and on the parties' subsequent summary judgment filings, it is clear that Streuly's counterclaims were brought under WIS. STAT. § 427.104(g), (h), and (j).

with Repossessors stated that Repossessors would repossess the vehicle lawfully and that if the allegations in Streuly's complaint were proven, Repossessors had breached the contract.

¶11    After Landmark added Repossessors as defendants, Streuly amended his answer to include cross-claims against Repossessors. Specifically, Streuly made the same allegations regarding the conduct of Repossessors as in his initial complaint, but additionally alleged that Repossessors was directly liable for this conduct under WIS. STAT. § 427.104(1)(g), (h), and (j).

¶12    Repossessors moved to dismiss Streuly's cross-claims against it, arguing, among other things, that the claims were time-barred under WIS. STAT. § 425.307(1)'s statute of limitations for actions brought pursuant to WIS. STAT. chs. 421 to 427.[8]  The circuit court agreed and granted Repossessors' motion to dismiss.

¶13    Repossessors then moved for summary judgment as to Landmark's claim against it for breach of contract, arguing that the undisputed facts showed that Repossessors did not breach the peace or engage in illegal debt collection practices when attempting to repossess the Ranger, and that Repossessors thus did not breach its contract with Landmark.  The circuit court granted Repossessors' motion and dismissed Landmark's claims against Repossessors.

---

[8] WISCONSIN STAT. § 425.307(1) provides, "Any action brought by a customer to enforce rights pursuant to [WIS. STAT.] chs. 421 to 427 shall be commenced within one year after the date of the last violation of chs. 421 to 427, 2 years after consummation of the agreement or one year after last payment, whichever is later …."  Repossessors argued that Streuly's cross-claims against it were time-barred because they were brought more than one year after the alleged violation of WIS. STAT. § 427.104.

¶14 Landmark moved for summary judgment as to Streuly's unconscionability and illegal debt collection claims. The circuit court granted Landmark's motion as to the unconscionability claim and dismissed that claim. However, the court denied Landmark's motion for summary judgment on Streuly's illegal debt collection claims. The court ruled that a genuine issue of material fact existed as to whether the phone calls that Landmark made to Streuly constituted illegal debt collection practices.

¶15 Before the trial on Streuly's remaining claim regarding Landmark's debt collection practices, Landmark filed a motion in limine to prohibit Streuly from presenting evidence or arguments regarding the actions of Repossessors' agents. The circuit court granted Landmark's motion.

¶16 Following a two-day trial, the jury found that Landmark engaged in illegal debt collection practices in violation of WIS. STAT. § 427.104(1)(g), that Landmark's violation caused Streuly emotional distress, and that $1,500 would reasonably compensate Streuly for his emotional distress.

¶17 After the trial, Streuly moved for a partial new trial on damages based on the circuit court's exclusion of evidence regarding Repossessors' actions. The court denied that motion.

¶18 Streuly also moved the circuit court for an award of attorney fees. Although Streuly sought approximately $80,000 in attorney fees, the court awarded him $19,200 in attorney fees.

¶19 In total, Streuly was awarded $22,504.20, which consisted of the $1,500 in compensatory damages awarded by the jury as well as his costs and reasonable attorney fees. Landmark was awarded a deficiency judgment of

$9,790.84 after the Ranger was repossessed and sold at auction. The circuit court ordered that Landmark's deficiency judgment be offset against the judgment awarded to Streuly, thereby reducing Streuly's award to $12,713.36.

¶20    Streuly appeals. Additional facts are provided as necessary in the discussion that follows.

## DISCUSSION

¶21    On appeal, Streuly argues that the circuit court erred when it: (1) dismissed his unconscionability claim on summary judgment, (2) ruled that Streuly could not present evidence at trial of Repossessors' contact with Streuly, (3) calculated Streuly's award of attorney fees, and (4) offset Landmark's deficiency judgment against the judgment in favor of Streuly, thereby reducing Streuly's award of attorney fees. We address, and reject, each of these arguments in turn.

### I. *Landmark is entitled to summary judgment on Streuly's unconscionability claim.*

¶22    As stated, the circuit court granted summary judgment in favor of Landmark and dismissed Streuly's unconscionability claim. Streuly first argues that the court erred when it did so because the doctrine of issue preclusion required that Streuly's unconscionability claim go to trial. Alternatively, Streuly argues that the facts in the record were sufficient to require a trial on this claim.

### A. *Issue preclusion does not require that Streuly's unconscionability claim go to trial.*

¶23    As previously noted, after buying the Ranger, Streuly returned to the dealership a year later and purchased a Kia Forte. In a separate action arising from that transaction, Streuly brought counterclaims against the dealership, including a

claim that the dealership engaged in unconscionable practices. The dealership moved to dismiss Streuly's counterclaims on summary judgment and, in responding to the dealership's motion, Streuly argued, as pertinent here, that a jury could conclude from the undisputed facts that the dealership engaged in unconscionable practices under WIS. STAT. § 425.107.[9] The circuit court granted the dealership's motion with respect to all of Streuly's counterclaims, with the exception of Streuly's unconscionability counterclaim, and Streuly and the dealership subsequently settled the case. Streuly characterizes the court's ruling on his unconscionability claim in that action as a ruling that the claim "deserved a jury trial," and he argues that the doctrine of issue preclusion requires that his unconscionability claim against Landmark in this action survive summary judgment. Landmark counters that issue preclusion does not apply in this context because the court's decision in the prior litigation on the dealership's motion was not a final judgment on the merits.[10] We agree with Landmark.

¶24    "[I]ssue preclusion refers to the effect *of a judgment* in foreclosing relitigation in a subsequent action of an issue of law or fact that has been actually litigated and decided in a prior action." ***Ellifson v. West Bend Mut. Ins. Co.***,

___

[9] It is not clear from the parties' briefs or the record whether the dealership's motion on Streuly's counterclaims was a motion to dismiss for failure to state a claim upon which relief could be granted, a motion for judgment on the pleadings, or a motion for summary judgment. In any event, for purposes of this appeal, we will assume, as Streuly argues, that the court's decision in the earlier litigation was a decision on summary judgment, because our conclusion is the same whether it was a decision on a motion to dismiss for failure to state a claim upon which relief could be granted, a motion for judgment on the pleadings, or a motion for summary judgment.

[10] Landmark also argues that issue preclusion does not apply for several other reasons. We need not address these arguments because we reject Streuly's argument on the basis that the circuit court's decision on the dealership's motion in the earlier litigation was not a final judgment and therefore issue preclusion does not apply. *See **Barrows v. American Fam. Ins. Co.***, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

9

2008 WI App 86, ¶12, 312 Wis. 2d 664, 754 N.W.2d 197 (emphasis added). The first step in determining whether issue preclusion applies is thus to "determine whether the issue or fact was actually litigated and determined in the prior proceeding *by a valid judgment* in a previous action and whether the determination was essential to the judgment." *Id.* (emphasis added). Consistent with this, in *Ellifson*, when an insurer sought to invoke the doctrine of issue preclusion based on a denial of summary judgment in a previous case between the parties, we rejected the insurer's argument because we concluded that the denial of summary judgment in the earlier case "was a nonfinal order and not a final judgment on the merits." *Id.*, ¶¶16, 17. We explained, "While a grant of summary judgment is a conclusive and final judgment, a denial of a motion for summary judgment is an interlocutory, nonfinal order insufficient to bind a defendant in subsequent actions." *Id.*, ¶17 (citation omitted).

¶25 Here, for the same reason, Streuly cannot invoke issue preclusion to defend against Landmark's summary judgment motion in this case by relying on the court's decision in his earlier case denying the dealership's motion to dismiss Streuly's unconscionability counterclaim. A denial of a motion for summary judgment is not a final judgment.[11] *Id.*; *see also* WIS. STAT. § 808.03(1) ("A final judgment or final order is a judgment, order or disposition that disposes of the entire matter in litigation as to one or more of the parties …."). Because the earlier decision on the dealership's motion to dismiss Streuly's unconscionability

_____

[11] As noted, we are assuming for purposes of our analysis that the dealership's motion in the prior action was for summary judgment on Streuly's unconscionability counterclaim. If the motion was instead a motion to dismiss for failure to state a claim upon which relief can be granted, or a motion for judgment on the pleadings, we would reach the same conclusion, because a denial of either such motion would likewise not be a final judgment. *See* WIS. STAT. § 808.03(1).

counterclaim in that action was not a final judgment, it is insufficient to bind Landmark in this action, and issue preclusion does not apply.[12]

### B. Landmark is entitled to summary judgment on Streuly's unconscionability claim.

¶26    Streuly argues that even if the doctrine of issue preclusion does not compel a trial on his unconscionability claim, Landmark is not entitled to summary judgment on Streuly's unconscionability claim, and that this claim should have been submitted to the jury.

¶27    Summary judgment is proper when the summary judgment materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2). "We review de novo the grant of summary judgment, employing the same methodology as the circuit court." *Palisades Collection LLC v. Kalal*, 2010 WI App 38, ¶9, 324 Wis. 2d 180, 781 N.W.2d 503.

---

[12] Streuly argues that although a final judgment is required for *claim* preclusion to apply, it is not required for *issue* preclusion to apply, and that to require a final judgment for issue preclusion "would simply be reiterating part of the test for claim preclusion." Streuly is mistaken. A final judgment is required for both claim and issue preclusion. *Ellifson v. West Bend Mut. Ins. Co.*, 2008 WI App 86, ¶¶11-12, 16-17, 312 Wis. 2d 664, 754 N.W.2d 197.

Additionally, Streuly asserts that "[t]he issue of whether the [dealership's] conduct was sufficient to go to a jury was actually litigated in the prior case, and should be binding here." However, even if we assume that Streuly has correctly characterized the relevant issue and that the relevant issue was actually litigated for purposes of determining whether issue preclusion applies, issue preclusion only applies if an issue "'is actually litigated *and* determined by a valid and final judgment.'" *Hlavinka v. Blunt, Ellis & Loewi, Inc.*, 174 Wis. 2d 381, 396, 497 N.W.2d 756 (Ct. App. 1993) (emphasis added) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 27 (AM. LAW INST.1982)). Because we conclude, consistent with *Ellifson*, that the circuit court's earlier ruling does not bind Landmark because that decision was not a final judgment, we need not separately address whether the relevant issue was actually litigated. *See Barrows*, 352 Wis. 2d 436, ¶9.

¶28    The party moving for summary judgment "has the burden of establishing the absence of a factual dispute and entitlement to judgment as a matter of law." *Park Bancorporation, Inc. v. Sletteland*, 182 Wis. 2d 131, 141, 513 N.W.2d 609 (Ct. App. 1994). To defeat summary judgment, "[a] party opposing a summary judgment motion must set forth 'specific facts,' evidentiary in nature and admissible in form, showing that a genuine issue exists for trial." *Helland v. Kurtis A. Froedtert Mem'l Lutheran Hosp.*, 229 Wis. 2d 751, 756, 601 N.W.2d 318 (Ct. App. 1999). We "draw all reasonable inferences from the evidence in favor of the non-moving party." *Manor Enters., Inc. v. Vivid, Inc.*, 228 Wis. 2d 382, 389, 596 N.W.2d 828 (Ct. App. 1999).

¶29    Unconscionability "involves determinations of fact and law." *Wisconsin Auto Title Loans, Inc. v. Jones*, 2006 WI 53, ¶25, 290 Wis. 2d 514, 714 N.W.2d 155. Whether the undisputed facts render a contract or conduct unconscionable is an issue of law that we review independently. *See id.*

¶30    The unconscionability statute, WIS. STAT. § 425.107(1), provides:

> With respect to a consumer credit transaction, if the court as a matter of law finds that any aspect of the transaction, any conduct directed against the customer by a party to the transaction, or any result of the transaction is unconscionable, the court shall … either refuse to enforce the transaction against the customer, or so limit the application of any unconscionable aspect or conduct to avoid any unconscionable result.

The burden of proof is on the party claiming unconscionability. *Wisconsin Auto*, 290 Wis. 2d 514, ¶30.

¶31    Landmark argues that it is entitled to summary judgment because the undisputed evidence does not support a finding of unconscionability as a matter of law. We agree.

12

¶32    We begin by addressing the parties' dispute regarding what is required to show unconscionability under WIS. STAT. § 425.107, which is relevant to our determination of whether Landmark is entitled to summary judgment on Streuly's unconscionability claim.  The parties dispute whether, under § 425.107, Streuly must show both procedural and substantive unconscionability.  Landmark argues that Streuly must show both, relying on *Wisconsin Auto*.[13]  There, a borrower opposed a lender's motion to compel arbitration on the basis that the arbitration provision in the loan agreement between the borrower and lender was "not valid or enforceable under common and statutory law." *Id.*, ¶23; *see also id.*, ¶22 (stating that the borrower, in a counterclaim, asserted "that the loan agreement was unconscionable under … § 425.107").  In concluding that the arbitration provision was unconscionable, our supreme court stated, "For a contract or a contract provision to be declared invalid as unconscionable, the contract or contract provision must be determined to be both procedurally and substantively unconscionable." *Id.*, ¶¶2, 29.  Streuly argues that the analysis in *Wisconsin Auto* pertains to a common law claim of unconscionability, and that an analysis of unconscionability under § 425.107 does not similarly require that both substantive and procedural unconscionability be established.  Therefore, Streuly relies on the text of § 425.107(3), which lists factors that the court may consider in determining unconscionability.  Streuly argues that § 425.107(3) lists factors beyond those considered under the common law analysis that he argues was used in *Wisconsin*

---

[13] In addition to *Wisconsin Auto Title Loans, Inc. v. Jones*, 2006 WI 53, 290 Wis. 2d 514, 714 N.W.2d 155, Landmark also improperly cites as "persuasive" authority unpublished per curiam opinions.  We remind counsel that it is improper to cite per curiam opinions in briefs to this court. *See* WIS. STAT. § 809.23(3)(a) and (b) (providing that a per curiam opinion "may not be cited in any court of this state as precedent or authority, except to support a claim of claim preclusion, issue preclusion, or the law of the case").

*Auto*, and he argues that one of the factors that the court *may* consider is "[d]efinitions of unconscionability in … rulings and decisions of … judicial bodies." Sec. 425.107(3)(i).

¶33 We are unpersuaded by Streuly's argument that procedural and substantive unconscionability need not be shown to establish unconscionability under WIS. STAT. § 425.107. In particular, we are unpersuaded by Streuly's argument that *Wisconsin Auto* does not control. As stated, Landmark argues that *Wisconsin Auto* controls, relying on language in the opinion showing that the arbitration provision at issue was challenged on both statutory and common law grounds. Streuly does not meaningfully respond to this argument, and we thus conclude that, consistent with the analysis used in *Wisconsin Auto*, for an unconscionability claim under § 425.107, both procedural and substantive unconscionability must be shown.[14]

¶34 Under the analysis for unconscionability articulated in *Wisconsin Auto*, we conclude that the undisputed facts do not establish substantive unconscionability related to Streuly's purchase of the Ranger. "Substantive unconscionability addresses the fairness and reasonableness of the contract provision subject to challenge." *Id.*, ¶35. "The analysis of substantive unconscionability requires looking at the contract terms and determining whether the terms are 'commercially reasonable,' that is, whether the terms lie outside the limits of what is reasonable or acceptable." *Id.*, ¶36 (footnote omitted). Streuly

---

[14] Streuly's response to Landmark's argument is contained in a single paragraph. In that paragraph, Streuly asserts that Landmark's citation in support of its argument is to a part of the opinion discussing the facts of the case and that WIS. STAT. § 425.107 was "not directly discussed, but only referenced in footnotes."

argues that the monthly payment on the Ranger was more than ten percent of his gross monthly income and that more than 1/6th of the purchase price was for GAP insurance and a protection plan. Streuly also argues that although Landmark would have financed the purchase at a rate of 6.15 percent, the dealership marked up the rate to 8.15 percent in order to profit from the financing of the Ranger.[15] However, Streuly does not argue, nor was there any evidence on summary judgment, that these terms are not commercially reasonable, and in the absence of any such argument or evidence, we conclude that they are not "outside the limits of what is reasonable or acceptable." *Id.*, ¶36. Because Streuly has not shown substantive unconscionability, we need not address whether Streuly has shown procedural unconscionability. *See id.*, ¶29; *see also* **Turner v. Taylor**, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (when a decision on one issue is dispositive, we need not reach other issues raised).

¶35     However, even if we assume that procedural and substantive unconscionability are not required, we would nonetheless conclude that summary judgment was proper because, using the factors outlined in WIS. STAT. § 425.107(3), the undisputed facts on summary judgment do not establish that any aspect of the transaction, any of Landmark's conduct, or the result of the transaction is unconscionable.

---

[15] Streuly argues that the actions of the dealership are relevant to Streuly's unconscionability claim against Landmark because WIS. STAT. § 425.107(1) provides relief if "any aspect of the transaction, any conduct directed against the customer by a party to the transaction, or any result of the transaction is unconscionable." We will assume for purposes of our analysis that the dealership's actions are relevant because even when these actions are considered, the undisputed facts do not establish unconscionability.

¶36    WISCONSIN STAT. § 425.107(3) states that "the court may consider, among other things, the following as pertinent to the issue of unconscionability":

> (a)  That the practice unfairly takes advantage of the lack of knowledge, ability, experience or capacity of customers;
>
> (b)  That those engaging in the practice know of the inability of customers to receive benefits properly anticipated from the goods or services involved;
>
> (c)  That there exists a gross disparity between the price of goods or services and their value as measured by the price at which similar goods or services are readily obtainable by other customers, or by other tests of true value;
>
> (d)  That the practice may enable merchants to take advantage of the inability of customers reasonably to protect their interests by reason of physical or mental infirmities, illiteracy or inability to understand the language of the agreement, ignorance or lack of education or similar factors;
>
> (e)  That the terms of the transaction require customers to waive legal rights;
>
> (f)  That the terms of the transaction require customers to unreasonably jeopardize money or property beyond the money or property immediately at issue in the transaction;
>
> (g)  That the natural effect of the practice would reasonably cause or aid in causing customers to misunderstand the true nature of the transaction or their rights and duties thereunder;
>
> (h)  That the writing purporting to evidence the obligation of the customer in the transaction contains terms or provisions or authorizes practices prohibited by law; and
>
> (i)  Definitions of unconscionability in statutes, regulations, rulings and decisions of legislative, administrative or judicial bodies.

Of these factors, Streuly invokes those listed in paragraphs (a), (d), (g), and (i).

¶37   Starting with Streuly's arguments under the factor listed in paragraph (i)—"[d]efinitions of unconscionability in … rulings and decisions of … judicial bodies"—Streuly attempts to analogize the facts here to those in *Wisconsin Auto*.  We reject Streuly's arguments under this factor because, as stated, the undisputed facts do not show any substantive unconscionability, which the *Wisconsin Auto* court stated was required to show unconscionability.  *Wisconsin Auto*, 290 Wis. 2d 514, ¶30.

¶38   Turning to Streuly's arguments under the remaining factors in paragraphs (a), (d), and (g), Streuly argues that he "believed that he needed GAP insurance," and that "[a] jury could find [the dealership's] discussion of GAP insurance at the time of the sale reasonably caused Streuly to misunderstand the nature of 'GAP' insurance, namely, whether it was required."  As support for this argument, Streuly cites his deposition testimony.  Streuly did testify that he was "pretty sure" that he needed GAP insurance.  But Streuly then also testified that he was not sure why he believed that he needed to have GAP insurance.  And Streuly does not otherwise cite any evidence in the summary judgment record that would support a finding that he believed that he needed to purchase GAP insurance because of what the dealership told him.  As a result, no reasonable jury could find, based on Streuly's testimony, that the dealership falsely represented to Streuly that GAP insurance was necessary.  *See* WIS. STAT. § 802.08(2) (stating that summary judgment is proper when "there is no genuine issue as to any material fact"); *Central Corp. v. Research Prods. Corp.*, 2004 WI 76, ¶19, 272 Wis. 2d 561, 681 N.W.2d 178 ("An issue of fact is genuine if a reasonable jury could find for the nonmoving party.").

¶39   Streuly also argues that his inability to make payments on the Ranger shortly after purchasing it demonstrates that the transaction was unfair.

However, even if we assume that an inability to make payments shortly after the purchase could demonstrate unfairness, Streuly's argument is unsupported by the summary judgment materials. As noted, with the exception of one late payment in the first few months following the purchase, the summary judgment materials, including Streuly's own deposition testimony, show that Streuly was able to make payments on the Ranger for approximately two years, and that he stopped making payments only after he lost his job.

¶40 Additionally, Streuly identifies evidence in the summary judgment materials showing that the salesperson who sold Streuly the Ranger was employed by an independent contractor rather than by the dealership, and that the salesperson worked at the dealership "for a temporary period of time." Streuly argues that this evidence "allows an inference [that] the salesperson misled Streuly because he could not be punished by [the dealership] and likely would not be there in a year when Streuly returned." However, the fact that the salesperson who sold the Ranger to Streuly worked at the dealership temporarily does not make it reasonable to infer that the salesperson misled Streuly; such an inference would be speculative rather than reasonable. *See State ex rel. N.A.C. v. W.T.D.*, 144 Wis. 2d 621, 636, 424 N.W.2d 707 (1988) (explaining that a reasonable inference "cannot be based on speculation or conjecture"); *see also Manor Enterprises, Inc.*, 228 Wis. 2d at 389 (stating that whether a particular factual inference may be drawn and whether it is reasonable are questions of law).

¶41 Further, Streuly states generally that he dropped out of school before finishing the 9th grade, that he believes that he has cognitive disabilities, and that he "agreed [that] it was a 'possibility' his level of education and disability interfered with his ability to purchase the Ford Ranger." However, as Landmark points out and as the circuit court noted, there is no evidence in the record to

support Streuly's claim that he has a diminished intellectual capacity,[16] and Streuly testified that there was no reason that the dealership would have been aware that he had a limited education or any kind of learning disability. Streuly testified that he did not ask for any additional explanation of the contract terms and that he understood what his monthly payments would be and how long he would have to those make payments. Streuly also testified that he understood what GAP insurance was and what the service program he purchased was, and that he declined other options presented. Moreover, Streuly has extensive experience purchasing vehicles, having purchased more than 20 cars in his lifetime. Two of those vehicles were ones that Streuly purchased from the same dealership prior to purchasing the Ranger.

¶42    Streuly also identifies deposition testimony in which he stated that the dealership did not explain that the loan for the vehicle that Streuly traded in was "rolled in" to the purchase price of the Ranger. However, Streuly testified that he knew that he owed more on the trade-in vehicle than the trade-in allowance that he was receiving for the vehicle, and that he understood that the dealership would have to pay off the balance.

¶43    Reviewing these facts from the summary judgment materials independently—and doing so, to the extent that they are disputed, in the light most favorably to Streuly—we conclude that they do not show that any aspect of the

---

[16] For example, although Streuly alleged in his counterclaim that he had "a reading comprehension of below 5th grade level" and that he was unable to pass a fifth grade reading comprehension test, Streuly testified at a deposition that this was based on his attorney's assessment and that he had not taken a reading comprehension test. Streuly also alleged that he was "unable to spell simple words from a 5th grade spelling test," and that he was "unable to pass a 5th grade level civics test," but he clarified in his deposition testimony that he was not given any spelling or civics tests.

transaction or the conduct of Landmark or the dealership was unconscionable. These facts do not show that Landmark or the dealership unfairly took advantage of a lack, on Streuly's part, "of knowledge, ability, experience or capacity." WIS. STAT. § 425.107(3)(a). These facts do not show that either Landmark's or the dealership's practices enabled them to take advantage of Streuly's inability to reasonably protect his interests "by reason of physical or mental infirmities, illiteracy or inability to understand the language of the agreement, ignorance or lack of education." Sec. 425.107(3)(d). Nor do the facts show that any of Landmark's or the dealership's practices caused Streuly "to misunderstand the true nature of the transaction or [his] rights and duties thereunder." Sec. 425.107(3)(g). Therefore, even if we assume that Streuly was not required to show both procedural and substantive unconscionability, we nonetheless reject Streuly's arguments under § 425.107's factors.

*II.  Streuly is not entitled to a new trial on damages based on the circuit court's exclusion of evidence related to Repossessors' contact with Streuly.*

¶44     After the circuit court's summary judgment rulings and before the trial on Streuly's illegal debt collection claim, Streuly filed a witness list, in which he stated that he intended to call a Repossessors employee to testify about his contacts with Streuly. In response, Landmark filed a motion in limine. Relevant here, Landmark argued that Streuly should be prohibited from presenting evidence or arguments regarding Repossessors' actions. Landmark argued that "the limited scope of [the] trial" was "Landmark's own conduct in making telephone calls to Streuly," and that "[a]ny evidence regarding the actions of third-parties or actions by Landmark beyond the scope of the phone calls at issue is irrelevant and therefore inadmissible." In response, Streuly argued that his claim "was that the

total level of contacts was harassing"; that on summary judgment, he "presented evidence of … email, mail, telephone, and in-person contacts"; and that Repossessors' contacts with him as Landmark's agent were "relevant and … part of the continuum of harassment." The court agreed with Landmark and granted Landmark's motion in limine.

¶45    The circuit court did so based on its earlier decision to grant summary judgment in favor of Repossessors and dismiss Repossessors from the case. As noted, after Streuly's direct claims against Repossessors were dismissed as time-barred, Repossessors moved for summary judgment dismissing Landmark's claim against it for breach of contract. Repossessors argued that the undisputed facts showed that Repossessors, in its contact with Streuly on December 19, 2018, did not breach the peace or engage in illegal debt collection practices under WIS. STAT. § 427.104(1)(h) by engaging in conduct that could reasonably be expected to threaten or harass. Landmark joined in Repossessors' argument, and argued that the undisputed facts showed that neither Repossessors nor Landmark acted unlawfully in attempting to repossess the Ranger, and that Streuly's claim for illegal collection practices should be dismissed.[17]   Streuly opposed Repossessors' motion for summary judgment and argued (among other things) that "Landmark's repeated phone calls and repossession attempts could be found by a jury to violate [§] 427.104(1)(g)."

¶46    The circuit court granted Repossessors' motion for summary judgment and dismissed Landmark's claims against Repossessors. The court

---

[17] Landmark also argued that if the circuit court did not dismiss Streuly's illegal collections practices claim against Landmark, then Landmark's breach of contract claim against Repossessors should survive summary judgment.

reasoned that Landmark did not oppose Repossessors' motion for summary judgment and that the undisputed facts showed that Repossessors had not acted unlawfully in attempting to repossess the Ranger.

¶47    On Landmark's summary judgment motion, the circuit court determined that summary judgment was not proper as to Streuly's claim that Landmark had engaged in illegal debt collection practices.  Specifically, the court stated that a genuine issue of material fact remained regarding whether Landmark's own collection practices were unlawful:

> Whether or not the phone calls by Landmark were excessive enough to create a violation of illegal collection practices in the [c]ourt's mind still creates a question of fact for sure.  While I may not think it's very relevant -- that's what happens when you miss your payments; you're going to get collection calls -- it's not my decision to make here.  Whether the amount of calls were excessive does in the [c]ourt's mind create a question of fact for the jury.
>
> So to be clear, this does not include any conduct from Repossessors, Inc.  This would be as to Landmark's sole actions here as it relates to the alleged harassment as it relates to Mr. Streuly.

¶48    Consistent with its ruling on summary judgment, when deciding Landmark's motion in limine, the circuit court agreed with Landmark's argument that "the limited scope of [the] trial" was "Landmark's own conduct in making telephone calls to Streuly," and the court granted Landmark's motion in limine to exclude evidence of contacts between Streuly and Repossessors' agents.

¶49    After the trial, Streuly moved for a partial new trial on damages, arguing that the jury would have awarded more in damages if evidence had been presented regarding Repossessors' contact with Streuly.  In denying that motion, the circuit court stated:

> I dismissed the claim against Repossessors Inc. and indicated they could not be attributed to Landmark. The motions in limine … that were decided went along those same rulings. The [c]ourt believes it was consistent in those rulings and, as such, made the appropriate findings.
>
> I believe that the jury made the appropriate finding based on the records presented, and I do not believe a new trial is justified on the damages issue based on the jury's previous decision. In addition, a new jury would have to be empaneled, and I don't believe it's appropriate, pursuant to the statutes, to have separate juries hear both the determination of an injury and the appropriate damages. For these reasons, the request for a new trial solely on damages made by Mr. Streuly is denied.

¶50 On appeal, Streuly argues that the circuit court erroneously exercised its discretion when it granted Landmark's motion in limine regarding Repossessors' contacts, as Landmark's agent, with Streuly, and Streuly argues that he is entitled to a new trial on damages at which he can present evidence of Repossessors' contacts. In response, Landmark argues that even if the court did erroneously exercise its discretion, Streuly is not entitled to a new trial because he has not shown that the court's evidentiary ruling affected his substantial rights.[18] We agree, and reject Streuly's arguments on that basis.

¶51 "An erroneous exercise of discretion in admitting or excluding evidence does not necessarily lead to a new trial." *Martindale v. Ripp*, 2001 WI 113, ¶30, 246 Wis. 2d 67, 629 N.W.2d 698. Instead, "[t]he appellate court must conduct a harmless error analysis to determine whether the error 'affected the

---

[18] Landmark also argues, under the doctrine of issue preclusion, that the circuit court did not erroneously exercise its discretion when it excluded evidence regarding Repossessors' actions because the court had earlier ruled as a matter of law on summary judgment that Repossessors did not violate the Wisconsin Consumer Act. Because we conclude that Streuly has not shown that the court's ruling affected his substantial rights, we need not address this argument. *See Barrows*, 352 Wis. 2d 436, ¶9.

substantial rights of the party.' If the error did not affect the substantial rights of the party, the error is considered harmless." ***Id.***; *see also* WIS. STAT. § 805.18(1) ("The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party.").

¶52    "The standard for harmless error is whether there is a 'reasonable possibility' that the error contributed to the outcome of the action or proceeding at issue. A 'reasonable possibility' of a different outcome is a possibility sufficient to undermine confidence in the outcome." ***Martindale***, 246 Wis. 2d 67, ¶71 (quoted source omitted).

¶53    Streuly does not, in his brief-in-chief, argue that his substantial rights were affected. The only discussion related to this topic is in the "Statement of Issues," in which Streuly asserts, without support, that such evidence "would have supported an additional award of damages by the jury." Landmark points out Streuly's failure to argue that his substantial rights were affected in its response brief, and argues that because Streuly's substantial rights were not affected, he is not entitled to a new trial even if the circuit court did erroneously exercise its discretion. We are unpersuaded by Streuly's argument in reply.

¶54    Streuly argues that "[i]t is reasonable to infer that a jury which awarded $1,500 in damages for 4 phone calls would award additional damages for twenty-two in-person harassing contacts." We reject this argument because the record does not support Streuly's assertion that Repossessors' agents had twenty-two in-person contacts with Streuly that could have been considered by the jury were it not for the circuit court's evidentiary ruling. Streuly first asserts that Repossessors' agents had multiple "in-person contacts" with Streuly in his brief-

in-chief, and in response, Landmark argues that there was in fact only one. Streuly does not address this in his reply brief or correct his earlier assertions. In arguing that there were multiple in-person contacts between Streuly and Repossessors' agents, Streuly cites a log of Repossessors' actions regarding the attempted repossession of the Ranger. Although this log indicates that Repossessors' agents "checked [Streuly's] address" on multiple occasions, Landmark directs us to an affidavit of the Repossessors' agent assigned to the case in which the agent avers that "checking the address" entailed driving by Streuly's house to see if the Ranger was there. In the affidavit, which was submitted after Streuly argued before the circuit court that the agent "continued to go to Streuly's house" and that there were a total of 22 "repossession contacts," the agent clarified that the agent had only spoken with Streuly regarding the Ranger at his home on one occasion, and that he had otherwise only driven by Streuly's home to see if the Ranger was there. Thus, although Streuly asserts that Repossessors' agents had more than twenty "in-person contacts" with Streuly regarding the Ranger, the logs of Repossessors' activities regarding Repossessors' attempts to repossess the Ranger do not support this argument, Streuly does not otherwise provide factual support for his assertion regarding the number of in-person contacts, and Streuly's assertion is belied by the affidavit from Repossessors' agent.[19]

---

[19] We note that Streuly does not argue that the instances in which a Repossessors agent drove by Streuly's house to see if the Ranger was there could constitute conduct which could reasonably be expected to threaten or harass Streuly in violation of WIS. STAT. § 427.104(1)(h), nor do we discern any support for such an argument in the record. Instead, Streuly's argument is that Repossessors' contacts with Streuly as Landmark's agent were harassing because they came after Streuly asked Landmark to only contact him through his lawyer. These instances in which Repossessors' agents drove by Streuly's house are thus irrelevant because they are not "contacts."

¶55    Relying on the evidence in the record, Landmark argues, and Streuly does not refute in his reply brief, that there was only one in-person contact between Streuly and Repossessors' agent concerning the Ranger. Landmark points out that on summary judgment, the circuit court ruled as a matter of law based on the summary judgment materials that Repossessors' conduct did not constitute an illegal debt collection practice under WIS. STAT. § 427.104(g) or (h), which prohibit communication or conduct which can "reasonably be expected to threaten or harass." The court stated, "As to the allegations by Streuly, the vehicle was never taken. Streuly[,] by his deposition[,] didn't object.… [T]he actual vehicle in question here was hidden in the garage. Streuly was not denied access to contact his attorney. It was agreed that [contact with the attorney] did happen."

¶56    Because Streuly's arguments are premised on his unsupported assertion regarding the number of in-person contacts from Repossessors,[20] Streuly does not develop an argument that the exclusion of evidence regarding this single in-person contact between Streuly and Repossessors affected his substantial rights. Nor does he cite any legal authority that would support such a conclusion. Therefore, even if we assume without deciding that the circuit court erroneously exercised its discretion in excluding evidence of Repossessors' in-person contact with Streuly, the exclusion of this evidence did not affect Streuly's substantial rights such that he would be entitled to a new trial. *See Clean Wis., Inc. v. PSC*,

---

[20] For example, Streuly, based on his unsupported assertion regarding the number of in-person contacts with Repossessors' agents, argues that "[t]here is a reasonable possibility that a jury would have awarded more damages if presented with evidence that the in-person contacts were nearly six times the telephone calls."

2005 WI 93, ¶180 n.40, 282 Wis. 2d 250, 700 N.W.2d 768 (we need not address undeveloped arguments).[21]

### III. The circuit court did not erroneously exercise its discretion in its award of attorney fees.

¶57    After the trial, Streuly filed a motion for an award of attorney fees pursuant to WIS. STAT. § 425.308(1), which provides:

> If the customer prevails in an action arising from a consumer transaction, the customer shall recover the aggregate amount of costs and expenses determined by the court to have been reasonably incurred on the customer's behalf in connection with the prosecution or defense of such action, together with a reasonable amount for attorney fees.

When Streuly first filed his motion, he requested a total of $71,001.25 in attorney fees.[22]  Landmark objected to Streuly's motion for attorney fees and argued that Streuly could not recover fees for work done on his unsuccessful claims, that the fees Streuly sought were excessive given the nature of the case, and that the circuit court must presume that Streuly's attorney fees were limited to $4,500 (three times the $1,500 awarded to Streuly as compensatory damages) pursuant to WIS. STAT. § 814.045(2)(a).  *See* § 814.045(2)(a) ("In any action in which compensatory

---

[21] Streuly also appears to argue that the circuit court erred in dismissing on summary judgment Streuly's claims against Landmark that were based on Repossessors' conduct as Landmark's agent.  We reject this argument for the same reason we reject Streuly's argument that the court erred when it excluded evidence regarding Repossessors' actions as Landmark's agent: even if we assume that the court erred by dismissing Streuly's claims against Landmark based on Repossessors' actions, Streuly has not shown that his substantial rights were affected by any error.  *See Glendenning's Limestone & Ready-Mix Co. v. Reimer*, 2006 WI App 161, ¶14, 295 Wis. 2d 556, 721 N.W.2d 704 (concluding that reversal of summary judgment was not proper when the nonmoving party did not show that its substantial rights had been affected).

[22] After replying to Landmark's brief opposing the amount requested, Streuly requested an additional $7,027.50 in attorney fees, for a total of $78,028.75.

damages are awarded, the court shall presume that reasonable attorney fees do not exceed 3 times the amount of the compensatory damages awarded but this presumption may be overcome if the court determines, after considering the factors set forth in sub. (1), that a greater amount is reasonable.").

¶58　The circuit court concluded that WIS. STAT. § 814.045(2)(a)'s presumptive cap applied. However, the court also determined, after considering the factors listed in § 814.045(1), that an award of attorney fees beyond the presumptive cap was reasonable:

> [Streuly's counsel] asks for in excess of $85,000. There's no great magic way for the [c]ourt to come up with a number. As I have indicated here, I think this was a unique case; novel issues that were brought here; certainly some issues that had to be taken care of before [counsel] could get to the jury.
>
> So pursuant to the statute here, I'm going to go above the presumptive cap. Now, the question is as to where. Again, I believe a reasonable hourly rate in Janesville would be roughly $400 an hour. We had two full days of trial, as such, so 16 hours at 400 is $6,400 just for there.
>
> Obviously, there's some prep time involved and things of that nature and get through some of the other things. And the [c]ourt believes a reasonable amount of attorney's fees in this matter would be $19,200. With a cost of [$]1,804, I come up with a total judgment for attorney fees and costs of $21,004.20.

¶59　The circuit court thus determined that 48 hours was a reasonable amount of time to spend on the case and that $400 was a reasonable hourly rate. On appeal, Streuly argues that the court erred when it awarded him $19,200 in attorney fees.

¶60　We first address the proper standard of review. Streuly argues that we should independently review the circuit court's award of attorney fees. In

support of this argument, Streuly cites ***First Wisconsin Nat'l Bank v. Nicolaou***, 113 Wis. 2d 524, 335 N.W.2d 390 (1983). There, our supreme court stated:

> Although an attorney fee award is mandatory, [WIS. STAT. § 425.308] leaves the amount to the trial court's discretion. We have recognized that the trial court has the expertise and the opportunity to fully consider the matter of attorney fees. For this reason, its findings and award may be given some weight on review. However, this court need not defer to the trial court's determination. As part of its inherent supervisory power over the practice of law, this court may independently review the reasonableness of an attorney fee award.

*Id.* at 537 (citations omitted). Streuly also cites ***Radlein v. Industrial Fire & Casualty Insurance Co.***, 117 Wis. 2d 605, 345 N.W.2d 874 (1984). The ***Radlein*** court quoted ***Nicolaou*** as stating that a court may independently review the reasonableness of an attorney fee award, but the ***Radlein*** court notably did not review the award of attorney fees in that case because the award was not challenged on appeal. *Id.* at 631.

¶61     In contrast, Landmark argues that we should review the circuit court's award of attorney fees for an erroneous exercise of discretion, citing ***Standard Theatres, Inc. v. DOT***, 118 Wis. 2d 730, 349 N.W.2d 661 (1984). In ***Standard Theatres***, our supreme court, after quoting ***Nicolaou***, stated, "We believe that the trial court is in an advantageous position to make a determination as to the reasonableness of a firm's rates." *Id.* at 747. The ***Standard Theatres*** court reasoned that the circuit court "'has observed the quality of the services rendered and has access to the file in the case to see all of the work which has gone into the action from its inception,'" and that the circuit court "'has the expertise to evaluate the reasonableness of the fees with regard to the services rendered.'" *Id.* (quoting ***Tesch v. Tesch***, 63 Wis. 2d 320, 335, 217 N.W.2d 647 (1974)). The court then concluded "that the proper standard upon review of

attorney fees is that the [circuit] court's determination of the value of these fees will be sustained unless there is an abuse of discretion." *Id.*[23]

¶62    We agree with Landmark. *Standard Theatres* was decided after both *Nicolaou* and *Radlein*, and in *Standard Theatres* our supreme court, after considering the relevant language from *Nicolaou*, expressly stated that the proper standard of review for an award of attorney fees is for an erroneous exercise of discretion. Consistent with this, cases decided since *Standard Theatres* use this standard of review. *See, e.g.*, *Borreson v. Yunto*, 2006 WI App 63, ¶6, 292 Wis. 2d 231, 713 N.W.2d 656. Streuly does not identify any cases decided after *Standard Theatres* that rely on *Nicolaou* to say that our review is de novo. We thus conclude that the proper standard of review for the circuit court's award of attorney fees is for an erroneous exercise of discretion.

¶63    "A circuit court erroneously exercises its discretion when it fails to examine the relevant facts, applies the wrong legal standard, or does not employ a demonstrated rational process to reach a reasonable conclusion." *Id.* Because Streuly relies on the wrong standard of review, he does not argue that the circuit court erroneously exercised its discretion. Specifically, Streuly argues that the court should have awarded attorney fees in the amount that Streuly requested based on the time and labor required, the novelty and difficulty of the questions involved, the customary charges of the bar for similar services, the amount at issue and the benefits received by Streuly, the contingency of compensation, and the fact that Streuly had been represented by counsel for many years. Streuly also

---

[23] Since 1992, Wisconsin cases have "use[d] the phrase 'erroneous exercise of discretion' in place of the phrase 'abuse of discretion,'" but the phrases have equivalent meaning. *Seifert v. Balink*, 2017 WI 2, ¶93 n.50, 372 Wis. 2d 525, 888 N.W.2d 816.

argues that he should be awarded attorney fees in the amount requested even though not all of his claims succeeded. However, Streuly does not argue that the court erroneously exercised its discretion by failing to examine the relevant facts, applying the wrong legal standard, or failing to employ a demonstrated rational process when it awarded Streuly $19,200 in attorney fees. Moreover, Streuly does not do so even in response to Landmark's arguments under the proper standard review. In the absence of a developed argument from Streuly under the appropriate standard of review, we affirm the court's award of attorney fees. *See Clean Wis.*, 282 Wis. 2d 250, ¶180 n.40 (we need not address undeveloped arguments); *Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 ("[W]e will not abandon our neutrality to develop arguments.")

> *IV. The circuit court did not erroneously exercise its discretion when it offset Landmark's deficiency judgment against the judgment in favor of Streuly.*

¶64 After the trial, Streuly filed a proposed judgment which stated that "[t]he amounts awarded to Plaintiff and to Defendant shall not be offset against each other." Landmark objected to this language, arguing that the amount awarded to Landmark should be offset against the amount awarded to Streuly. Streuly was awarded $22,504.20, which consisted of the $1,500 in compensatory damages awarded by the jury as well as his costs and reasonable attorney fees; Landmark was awarded a deficiency judgment of $9,790.84. The circuit court ordered that Landmark's deficiency judgment be offset against the judgment in favor of Streuly.

¶65 On appeal, Streuly argues that the circuit court should not have offset Landmark's deficiency judgment against the amount awarded to Streuly for

attorney fees. Whether to allow one judgment to be offset against another is within the circuit court's discretion. *Black v. Whitewater Com. & Sav. Bank*, 188 Wis. 24, 205 N.W. 404, 406 (1925).

¶66 In arguing that offset was not proper, Streuly relies on *Betz v. Diamond Jim's Auto Sales*, 2014 WI 66, ¶35, 355 Wis. 2d 301, 849 N.W.2d 292. In *Betz*, a consumer hired an attorney to represent the consumer in connection with a dispute regarding a vehicle that the consumer had purchased. *Id.*, ¶¶7-8. The consumer sued the seller under WIS. STAT. §§ 100.18 and 218.016 and, relevant here, sought to recover attorney fees pursuant to § 100.18(11)(b)2. and § 218.0163(2). *Id.*, ¶9. After settlement offers were exchanged between the consumer's attorney and counsel for the seller, the consumer and the seller met without counsel and settled the case. *Id.*, ¶¶10-12. The settlement agreement did not provide for attorney fees, and the consumer's attorney moved the circuit court to compel the seller to pay statutory attorney fees. *Id.*, ¶¶12, 14. The court denied the attorney's motion and dismissed the case, and the attorney appealed. *Id.*, ¶¶18-19. Our supreme court concluded that the attorney could not seek statutory attorney fees from the seller because the attorney fees belonged to the consumer, not the attorney, and because the fee agreement between the consumer and the attorney did not validly assign the consumer's right to recover statutory attorney fees to the attorney. *Id.*, ¶52.

¶67 The *Betz* court acknowledged that "both the purpose of fee-shifting statutes and the public interest they promote" were undermined by the settlement there. *Id.*, ¶30. However, relying on *Zeisler v. Neese*, 24 F.3d 1000 (7th Cir. 1994), the *Betz* court explained that attorneys like the one in *Betz* "could protect their legitimate interest in receiving payment"

> "by entering into a written contract with [the] client in which the client assigns his statutory right to attorney's fees to the lawyer. Then the lawyer can enforce the right without the participation of his client …. If the client makes a settlement with the defendant, waiving attorney's fees, and the defendant has no notice of the assignment— no notice, that is, that the entitlement to attorney's fees is not the plaintiff's to waive—the lawyer can go against [the] client for breach of contract. If the defendant does have notice of the assignment, the lawyer can go directly against the defendant."

*Betz*, 355 Wis. 2d 301, ¶34 (quoting *Zeisler*, 24 F.3d at 1002). The *Betz* court "adopt[ed] the standard, as posed in *Zeisler*, as an appropriate framework to decide" the issue presented. *Id.*, ¶36.

¶68  Streuly does not dispute that attorney fees awarded pursuant to WIS. STAT. § 425.308(1) generally belong to the client, not the attorney. *See* § 425.308(1) ("If the customer prevails in an action arising from a consumer transaction, *the customer shall recover* the aggregate amount of costs and expenses determined by the court to have been reasonably incurred on the customer's behalf in connection with the prosecution or defense of such action, together with a reasonable amount for attorney fees." (emphasis added)); *see also* *Betz*, 355 Wis. 2d 301, ¶30 (similarly interpreting analogous language from WIS. STAT. § 100.18(11)). Instead, Streuly relies on the fee agreement between Streuly and his counsel, LawtonCates, S.C., which states, "[Streuly] assigns to [LawtonCates] all rights to fees and costs." Streuly argues that, because of this assignment, the circuit court should not have offset the deficiency judgment awarded to Landmark against the attorney fees awarded to Streuly. According to Streuly, *Betz* stands for the proposition that "when a client assigns the rights to payment to his lawyer, the lawyer has the right to payment from either the client or the defendant."

¶69    We disagree with Streuly's reading of ***Betz***.  As an initial matter, we observe that ***Betz*** addressed the effect of such an assignment in a particular context—specifically, when a client settles a case without obtaining statutory attorney fees.  In any event, however, Streuly's argument overlooks that the ***Betz*** court stated that an attorney may only recover statutory attorney fees from the defendant "so long as the defendant had notice of the assignment" prior to the settlement.  ***Betz***, 355 Wis. 2d 301, ¶35.  Otherwise, when the defendant has no notice of the assignment, the attorney's recourse is to recover attorney fees from the client.  ***Id.***, ¶¶34, 35.  Here, Landmark argues, and Streuly does not dispute, that Landmark received no notice of the assignment until Streuly submitted the fee agreement with his response to Landmark's motion to offset, which was after Landmark had been awarded a deficiency judgment.  Streuly does not argue in response that, under ***Betz***, Landmark had notice of the fee assignment such that LawtonCates had a right to payment from Landmark, and we therefore reject as undeveloped Streuly's argument that LawtonCates was entitled to recover attorney fees from Landmark.  *See **Clean Wis.***, 282 Wis. 2d 250, ¶180 n.40 (we need not address undeveloped arguments).

¶70    Streuly also argues that ***Betz*** "recognize[s] that once a client assigns his statutory right to recover fees, the client can no longer deal with those fees as if he is the owner," and that "the fees, once assigned, *become the attorney's property*, not the client's."  Streuly's argument appears to be that because Streuly assigned his right to recover attorney fees to LawtonCates, any attorney fees that were awarded belonged to LawtonCates, and offset was improper because it effectively reduced the fee award that LawtonCates would receive by applying some of that award toward Landmark's deficiency judgment against Streuly.  In other words, the offset effectively applies LawtonCates' fee award to Streuly's

debt. We reject this argument. As stated, the ***Betz*** court concluded that once a client has assigned the right to attorney fees to the client's attorney, if the client then settles the case without consulting the client's attorney, the attorney may seek to recover attorney fees either from the client, or, if the defendant had notice of the assignment, from the defendant. ***Betz***, 355 Wis. 2d 301, ¶34. This is not the same as concluding, as Streuly argues, that the fees belong to the attorney from the moment of assignment.

¶71 Streuly provides no persuasive, developed argument under ***Betz*** (or any other authority) as to how the circuit court in this case erroneously exercised its discretion when it offset Landmark's deficiency judgment against the judgment in favor of Streuly. Moreover, Landmark, in its respondent's brief, argues that Streuly's assignment of attorney fees to LawtonCates does not shield Streuly's award of attorney fees from offset pursuant to WIS. STAT. § 409.404(1), which states that the rights of an assignee are subject to "[a]ll terms of the agreement between the account debtor and assignor and any defense or claim in recoupment arising from the transaction that gave rise to the contract," as well as "[a]ny other defense or claim of the account debtor against the assignor which accrues before the account debtor receives a notification of the assignment authenticated by the assignor or the assignee." Relying on this language, Landmark argues that the judgment entered in favor of Landmark that established a total debt of $16,028 and Landmark's right to sell the Ranger and obtain a deficiency judgment was entered both before any judgment was entered in favor of Streuly and before Landmark had any notice of Streuly's assignment of attorney fees. As a result, pursuant to § 409.404, Landmark argues that Streuly's assignment does not protect the award of attorney fees from offset because LawtonCates' claim is subject to "any defense or claim" that Landmark had against Streuly, which includes the judgment entered

in favor of Landmark and Landmark's claim of offset based on that judgment. Streuly does not respond to this argument, and therefore concedes the issue. *See **United Coop. v. Frontier FS Coop.***, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (failure by appellant to respond in reply brief to an argument made in respondent's brief may be taken as a concession).

¶72    Because Streuly has not developed a persuasive argument as to how the circuit court erroneously exercised its discretion when it offset Landmark's deficiency judgment against the judgment in favor of Streuly, and because Streuly concedes Landmark's argument discussed above, we affirm the circuit court's decision regarding offset. *See **Industrial Risk Insurers***, 318 Wis. 2d 148, ¶25 ("[W]e will not abandon our neutrality to develop arguments.").

## CONCLUSION

¶73    For the reasons stated, we affirm.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.